EDWARD J. McKENNA, AS MAYOR AND TAXPAYER OF TOWN OF IRVINGTON; AND TOWN OF IRVINGTON, A MUNICIPAL CORPORATION, PLAINTIFFS-APPELLANTS, v. NEW JERSEY HIGHWAY AUTHORITY (A BODY CORPORATE AND POLITIC IN THE STATE HIGHWAY DEPARTMENT), DEFENDANT-RESPONDENT.

Argued May 31, 1955—Decided June 27, 1955.

*Mr. John J. Gaffey* argued the cause for the plaintiffs-appellants (*Mr. Herman W. Kurtz,* of counsel).

*Mr. Morris M. Schnitzer* argued the cause for the defendant-respondent.

The opinion of the court was delivered by

BURLING, J.    This is a civil action in which the parties have labeled it as being within the scope of the former prerogative writs brought to test the validity of tolls levied by the New Jersey Highway Authority (hereinafter called the Authority).    The complaint in the form of a petition of appeal, was filed by Edward J. McKenna, "as Mayor and taxpayer of the Town of Irvington," and by the Town of Irvington, a municipal corporation, under *R. R.* 4:88–8, in the Superior Court, Appellate Division.    After preliminary proceedings had been taken there but before final argument, the matter was certified by us on our own motion.

## ADJECTIVE DISPOSITION.

At the oral argument, the adequacy of these proceedings adjectively was questioned. We find the record inadequate for present disposition, but in order that a remand may be effectual reference herein to the proper course of procedure and as well to the issues and salient facts, as presently exhibited, is advisable.

The plaintiffs seek to proceed by action in lieu of prerogative writ. Former prerogative writs have been superseded. *N. J. Const.* 1947, *Art.* VI, *Sec.* V, *par.* 4; *R. R.* 4:88–1. In lieu thereof review, hearing and relief has been afforded in the Superior Court under rules promulgated by this court. *N. J. Const.* 1947, *Art.* VI, *Sec.* V, *par.* 4, *supra; R. R.* 4:88–2.

The plaintiffs as is disclosed by their pleading and on the covers of their briefs and appendix in relation to the caption of the case, laid the present matter as an appeal under *R. R.* 4:88–8, relating to the review of the "final decision or action of any state administrative agency." It seems, however, that this proceeding was more properly within *R. R.* 4:88–10, relating to review of "any administrative rule promulgated by any state administrative agency."

■ *Certiorari* is an extraordinary common-law remedy of ancient origin, and has been said to be confined to review of judicial actions. *Ferris, Extraordinary Legal Remedies* (1926), *sec.* 155, *p.* 177. *Cf.* 10 *Am. Jur., Certiorari, secs.* 2, 3, *p.* 524. However, in New Jersey, the powers of the Court of King's Bench, the English court existing prior to the American Revolution, were inherited by our former Supreme Court, which was created in colonial days (see *Edward B. McConnell, A Brief History of The New Jersey Courts,* 7 *N. J. D.* (1954) 349, 350). These powers included superintendence over civil corporations, magistrates and other public officers, and in New Jersey the use of the writ in this respect was frequently exercised. *Clarence T. Atkinson, Certiorari,* 19 *N. J. L. J.* 132 (1896). *Cf. Fischer v. Twp. of Bedminster,* 5 *N. J.* 534, 539–540 (1950); *Tucker v.*

*Board of Chosen Freeholders of Burlington*, 1 *N. J. Eq.* 282, 287 (*Ch.* 1831). It has been said that

"[w]hile the statement has frequently been made by our court [referring to the former Supreme Court] that the writ lies to review proceedings of a judicial or *quasi*-judicial character, yet it is extensively used to review the validity of ordinances and of by-laws, which are clearly merely legislative in character  *  *  * and to review various other acts of officers, boards and tribunals where it is difficult to discover the judicial nature of the proceedings held subject to the review  *  *  *." *Harris, Pleading and Practice in New Jersey* (*rev. ed.* 1939), *sec.* 735, *p.* 745.

*Cf.* 1 *Bradner, New Jersey Law Practice* (1940), *sec.* 533, *pp.* 495 *et seq.* The power was early established in great strength. In 1831 the former Court of Chancery held that if a public board had power to act the Court of Chancery could "take no cognizance of the complaints" because the "right of supervision and correction is in another tribunal" namely the former Supreme Court. *Tucker v. Board of Chosen Freeholders of Burlington, supra*, 1 *N. J. Eq.*, at *page* 287. Chancellor Vroom stated in the *Tucker* case, *supra*, that the "principle is universal, that wherever the rights of individuals are invaded by the act of persons clothed with authority to act, and who exercise that authority illegally, the persons aggrieved must seek redress by *Certiorari.*" *Ibid.* We have settled these principles in *Fischer v. Twp. of Bedminster, supra*, 5 *N. J.*, at *pages* 539–541.

■ *Mandamus* on the other hand was a high prerogative writ at common law directed to any natural person, corporation or inferior court within the jurisdiction requiring performance of some act. *Ferris, Extraordinary Legal Remedies* (1926), *sec.* 187, *p.* 218. It could not be used as a remedy for threatened violation of duty, for which injunction was the proper remedy. *Id., sec.* 193, *p.* 225. However *mandamus* would issue in conjunction with a judgment on *certiorari*, that is, where the invalidation of municipal action occurred a writ of *mandamus* would issue to ensure complete relief to the plaintiff. See *Campbell v. Board of Adjustment of Borough of South Plainfield*, 118 *N. J. L.* 116, 117 (*Sup.*

*Ct.* 1937); *Gabrielson v. Borough of Glen Ridge,* 13 *N. J. Misc.* 142, 148 (*Sup. Ct.* 1935). *Cf. Payne v. Borough of Sea Bright,* 14 *N. J. Misc.* 756, 758 (*Sup. Ct.* 1936). The writ of *mandamus* lay not to review but to compel. *Harris, Pleading and Practice in New Jersey* (*rev. ed.* 1939), *sec.* 707, *p.* 719. Compare *State v. Holliday,* 8 *N. J. L.* 205, 205–209 (*Sup. Ct.* 1825).

With these basic principles in mind, examination of *R. R.* 4:88–8 is in order. It is within this rule, *R. R.* 4:88–8, *supra,* that the plaintiffs seek relief.

■ In *Carls v. Civil Service Commission,* 17 *N. J.* 215, 219–220 (1955), we noted that *R. R.* 4:88–8 was generally "designed to deal with so-called *quasi*-judicial decisions or actions adjudicating the rights of particular individuals," whereas *R. R.* 4:88–10 "was designed to deal with so-called *quasi*-legislative rules governing future conduct generally." However, we pointed out in that case that the line between adjudication and rule-making was often shadowy and that litigants should not be prejudiced where they proceeded in timely fashion under one of the rules though they should properly have proceeded under the other. Since the plaintiffs' petition in the instant matter embodies an attack on the legal validity of administrative rules or regulations formally promulgated by the Authority it might well have been brought under *R. R.* 4:88–10, although we perceive no harm whatever in having the action proceed under *R. R.* 4:88–8.

■ It was suggested that the petition of appeal was subject to dismissal for failure of the plaintiff to file the petition within 30 days under *R. R.* 4:88–15, or 45 days under *R. R.* 1:3–1(*b*) as adopted in *R. R.* 4:88–15(*a*). The petition of appeal was filed September 27, 1954, but the date of promulgation of the allegedly invalid regulations is not disclosed. Further, the constitutionality of the regulations is involved and we have held that in such event the time limitation does not apply. *Holloway v. Pennsauken Twp.,* 12 *N. J.* 371, 375 (1953). In this case there appears to be no estoppel against the plaintiffs, such as reliance by the complaining party upon the alleged unconstitutional action. See *In re*

*Buckeye Pipe Line Co.*, 13 *N. J.* 385, 389 (1953). Compare *Bauer v. City of Newark*, 7 *N. J.* 426, 434–435 (1951).

█ The essential defect in the present matter is the absence from the record of (a) the regulations sought to be reviewed, namely, "Article 1.3.1 of New Jersey Highway Authority Traffic Regulations No. 2"; (b) a proper record of the proceedings of the Highway Authority at which these regulations were adopted; and (c) a judicial record concerning evidence pertinent to the issues of reasonableness. To a degree these defects were recognized by the parties and an attempt was made in good faith to supplement the record by resort to the taking of depositions under an order issued by the Superior Court, Appellate Division. Depositions are not authorized by *R. R.* 4:88–8, 9, 10 or 11. There was no submission of an agreed state of facts, under *R. R.* 4:88–8 (*cf. R. R.* 4:88–10). *R. R.* 4:88–9 and 11 authorize the Appellate Division to grant leave to supplement the record but the Appellate Division may only "order that the additional evidence be taken before the agency, or, in exceptional instances, before a judge of a trial division, upon such terms as it deems proper."

██ Although "it is a frequent practice for the writ [of *certiorari*] to go, while yet the final step that completes the injury is but threatened," *State, Hoxsey, Pros., v. Mayor, etc., City of Paterson*, 39 *N. J. L.* 489, 493 (*E. & A.* 1877), subsequent final judgment reversed on other grounds, 40 *N. J. L.* 186, 191 (*E. & A.* 1878), there must be a definitive act of the administrative agency brought up for review. And there must be a record made upon which the reasonableness or validity of the administrative action may be tested. In actions in lieu of prerogative writs in the Law Division of the Superior Court the rules governing civil practice generally apply. *R. R.* 4:88–3. In actions under *R. R.* 4:88–8 and 10, *supra*, the procedure differs.

In the ordinary review of municipal ordinances and other proceedings, the long-established jurisdiction of the former Supreme Court authorized inquiry into questions of fact and in that respect the taking of depositions was an approved

practice. *E. g. Lighthipe v. City of Orange,* 75 *N. J. L.* 365, 367–368 (*Sup. Ct.* 1907), affirmed 76 *N. J. L.* 817, 823 (*E. & A.* 1908). *Cf.* 1 *Bradner, New Jersey Law Practice* (1940), *sec.* 546, *pp.* 516–517. It is in this light, in appropriate cases, that the provisions of *R. R.* 4:88–8 and 10, *supra,* and *R. R.* 4:88–9 and 11, *supra,* are to be read. It is clear that in this respect *R. R.* 4:88–8 and 10, *supra,* relate to cases where a condensation of an existing record is desired. *R. R.* 4:88–9 and 11, *supra,* authorize the taking of additional evidence. If a judge of a trial division of the Superior Court is made the hearer of new evidence (in "exceptional cases"), he makes no finding. If the matter is entrusted to the state agency, the state agency not only compiles the new record but makes new findings based thereon.

This new practice does not encompass the taking of depositions. The new practice established by *R. R.* 4:88–8, 9, 10 and 11, *supra,* is, however, within the scope of the jurisdiction over prerogative writs inherited from the former Supreme Court, with procedure for hearing and review enlarged under *N. J. Const.* 1947, *Art.* VI, *Sec.* V, *par.* 4, *supra.* Compare *Abelson's, Inc., v. New Jersey State Board of Optometrists,* 5 *N. J.* 412, 417–418 (1950); *Abbott v. Beth Israel Cemetery Ass'n of Woodbridge,* 13 *N. J.* 528, 539–540 (1953); *In re New Jersey Power & Light Co.,* 9 *N. J.* 498, 526–527 (1952).

### The Merits.

The petition of appeal asserted that the matter involves a portion of an express highway of this State known and under construction as "The Garden State Parkway" authorized under *L.* 1952, *c.* 16, *sec.* 20, *N. J. S. A.* 27:12B–20. See also *Abbott v. Beth Israel Cemetery Ass'n. of Woodbridge, supra,* 13 *N. J.,* at *pages* 533–534. This appears to be admitted by the Authority.

The petition of appeal asserts without contradiction that the Authority is a body corporate and politic created by *L.* 1952, *c.* 16, *N. J. S. A.* 27:12B–1 *et seq.,* in the State High-

way Department and that pursuant to specific authorization contained in *L.* 1952, *c.* 16, *sec.* 20, *N. J. S. A.* 27:12B–20, *supra,* the Authority has commenced construction of a project known as "The Garden State Parkway," consisting of an express highway through the State of New Jersey, a part of which highway is located in the Town of Irvington.

The Garden State Parkway begins at points selected by the Authority at Paterson and at State Highway Route No. 17 in Paramus or Ridgewood and takes a southerly course through Clifton, Passaic County, Essex County and Union County to Woodbridge, then a general southerly course to the vicinity of the Edison Bridge, over the Raritan River, through Middlesex County and Monmouth County, to Toms River and then to a point at or near the City of Cape May. *N. J. S. A.* 27:12B–20, *supra.*

It appears to be undisputed that Parkway travel is toll-free between Bloomfield Avenue, Bloomfield, and the Raritan River in Middlesex County, except for a corridor section of 2.5 miles which lies between Springfield Avenue in Irvington and State Highway Route No. 22 in Union County. Initially four entrance and three exit ramps were proposed to be provided in this corridor area, all pointing toward the Union toll plaza.

The Authority later (July 8, 1953) adopted a "General Bond Resolution Establishing Issue of Authority Bonds." By its terms (*sec.* 203), the resolution became the underlying agreement between the Authority and the holders of $305,-000,000 of Parkway bonds as well as the State of New Jersey, by virtue of its guaranty of $285,000,000 of those obligations (*L.* 1952, *c.* 17, *sec.* 4).

In section 711 (2) of the resolution, the Authority covenanted that the initial toll schedule for transit over the Parkway would conform substantially to the rates prescribed in a designated traffic and earnings study, predicated upon the initiated Parkway design and compiled by Coverdale and Colpitts, Authority consultants, "or such other initial schedule of tolls as the Authority may fix and which, in the opinion of said engineering firm, would not diminish the estimates

of toll revenues made by said engineering firm and contained in said Report. * * *"

After $285,000,000 of State Guaranteed Parkway Bonds had been sold, Irvington requested that ramps south of Springfield Avenue be reversed in direction, so that southbound Parkway travel could be discharged and northbound travel received below Springfield Avenue.

There is a divergence of arguments in the briefs as to the number designations of the ramps involved. The plaintiffs insist the ramps in question are at Authority locations Nos. 142 and 143. The Authority contends that only ramps at location No. 143 are involved. The evidence discloses: ramps at Mill Road, the Union County line, apparently location No. 142; ramps at approximately Fern Avenue, in Irvington, near the Clinton Cemetery, which appear to be location No. 142A, south of Lyons Avenue; ramps at approximately May Street, in Irvington, north of the Essex County Park (and north of Lyons Avenue) and south of Springfield Avenue, apparently location No. 143; there are ramps north of Springfield Avenue opposite Avon Avenue and Woodlawn Place (apparently location No. 143A) and between Grove Terrace and 16th Avenue (apparently location No. 144). It appears from analysis of the briefs and evidence that the dispute involved in this matter relates to the ingress and egress ramps at locations Nos. 142A and 143 as hereinbefore described.

Factually it appears that the proposed traffic flow on the ramps in question was changed in direction before construction of the ramps to alleviate anticipated traffic congestion in Irvington. The pertinent portion of the statute, *N. J. S. A.* 27:12B–20, *supra,* provides:

"* * * the Authority: * * * (3) *shall,* with respect to any part of said project located in Essex county, *provide connections therewith* by means of parallel or other feeder or service roads or otherwise, *to and from existing county highways intersecting such part of said project between and including Springfield Avenue,* Irvington and Belleville avenue, Bloomfield, or such of said county highways as, prior to September fifteenth, one thousand nine hundred and fifty two or such later date as may be fixed by the Authority,

shall be designated by certificate of the county engineer of Essex County, approved by resolution of the Authority; and (4) *shall not collect tolls* on such project *at Springfield avenue,* Irvington or Belleville avenue, Bloomfield, or at any point between said avenues, except with respect to vehicles entering or leaving the project south of said Springfield avenue or north of said Belleville avenue. In the design, construction and operation of such project, *it shall be the duty of the Authority,* so far as may be deemed practicable by it and may be permitted by the terms of any agreement by it with the holders of its bonds or notes, *to permit the largest possible toll-free use of the project* by intracounty or short-haul traffic and provide the largest possible number of points of connection between public highways and the project *consistent with safe and efficient use of such project and public highways* and safe and economical construction and operation of the project on a self-supporting basis." (Italics supplied)

The Authority, except as limited by *N. J. S. A.* 27:12B–20, *supra,* has broad powers over traffic flow and tolls. See *clauses (i)* and *(m)* of *L.* 1952, *c.* 16, *sec.* 5, as am. *L.* 1953, *c.* 164, *sec.* 5, *N. J. S. A.* 27:12B–5.

On January 25, 1954, the Authority adopted a resolution stating:

"On motion by Commissioner de Nooyer, seconded by Commissioner England, it was directed that the recommendations of Chief Engineer Giffin, *concerning the ramps on Springfield Avenue, Irvington,* be accepted. These provided for a 25c toll on the northbound ramp, allowing for a free return trip via the southbound ramp, making the effective toll 12½ cents on each ramp." (Italics supplied)

The plaintiffs asserted in the petition of appeal that *N. J. S. A.* 27:12B–20, *supra,* prohibits the collection of tolls at access and egress ramps located "approximately 1700 feet south of Springfield Avenue in the Town of Irvington." It was charged in the petition:

"8. Over the objection of the plaintiffs, defendant has commenced the construction of toll booths upon the aforementioned ramps, and plaintiffs believe that defendant has determined, in Article 1.3.1 of New Jersey Highway Authority Traffic Regulations No. 2, to charge and collect a toll from motorists who enter or leave the Parkway at said ramps.

282

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

9. No tolls have been collected as of the time this petition of appeal was completed, but plaintiffs fear that a toll is to be imposed, although plaintiffs have been served with no official notice of defendant's determination so to do."

This was alleged to contravene the express terms of the statute. The plaintiff sought an order prohibiting the imposition of tolls at the ramps hereinbefore adverted to, and incidental thereto a declaration that "the final decision and action of the New Jersey Highway Authority" is illegal and void.

The status and meaning of the resolution of the Authority of January 25, 1954, *ante,* is in doubt. We are unable on the present record to determine whether (1) it declares ramps at locations Nos. 142A and 143 as hereinbefore described, or either location, to be "at Springfield Avenue" or whether (2) it constituted *adoption* of the tolls recommended, or whether (3) subsequent dispositive final action was or will be taken by the Highway Authority. The regulations referred to in the petition of appeal as "Article 1.3.1 of New Jersey Authority Traffic Regulations No. 2" are not contained in the record, nor is the date of their adoption by final action of the Authority established.

The questions involved include: (1) whether the alleged tolls to be collected at new booths at the ramps hereinbefore mentioned are violative of the statutory mandate that the Authority "shall not collect tolls on such project at Springfield Avenue, Irvington," and (2) if tolls may be collected at either group of ramps (*i. e.,* locations Nos. 142A or 143 as hereinbefore described) whether the allegedly proposed mandatory round-trip toll is arbitrary, unreasonable and unconstitutional. The reasonableness of the tolls, including validity of the mandatory round-trip feature, is uncertain and requires an appropriate record. The respondent Authority contended that removal of tolls at these ramps would adversely affect the bonds issued for this Garden State Parkway project. The effect of this contention must be adjudged.

### CONCLUSION.

In this matter the appropriate course for this court is to remand the matter to the Superior Court, Appellate Division, with direction to order a full record of evidence to be made before the New Jersey Highway Authority, together with findings of fact thereon by the New Jersey Highway Authority. *R. R.* 4:88–9. The appellate court is required to determine whether the administrative action is reasonable and in order to make that determination a record of evidence and findings is a necessity. *Cf. Delaware, L. & W. R. Co. v. City of Hoboken,* 10 *N. J.* 418, 426–427 (1952). The findings of fact should include findings as to: (1) the relative locations of ramps Nos. 142A and 143 as hereinbefore described, with respect to Springfield Avenue in Irvington; (2) the merits of the reasonableness of the tolls, including the mandatory round-trip feature, proposed to be collected at booths at these ramps; and (3) the effect of elimination of tolls at these ramps or any of them on the overall toll and bond structure of the financial aspects of the Garden State Parkway project. All findings should be made in relation to the statutory provisions pertinent to all Parkway tolls and especially to the Springfield Avenue area. Upon the completion thereof the record of evidence and findings, together with the pertinent regulations or resolutions of the New Jersey Highway Authority subjected to review, shall be made part of the record before the Appellate Division. This will afford an opportunity and the advantage of the use of a general income-producing toll experience table concerning the entire Parkway traffic which will include the probable dense summer traffic, so as to be considered in connection with the effect relief sought by plaintiffs would have upon the Authority's bonds.

Upon completion of the record as hereinbefore set forth, the matter will proceed in the Superior Court, Appellate Division, to a determination of all the issues involved. The pending matter will be remanded without disposition on the merits to the Superior Court, Appellate Division, for com-

pliance with the directions contained in this opinion. In the interim, since it is necessary to obtain further administrative consideration of the matters involved in this cause, jurisdiction in the Superior Court, Appellate Division, will be retained. This terminates the effect of the present certification by this court. Any further review by this court will require appeal or certification under the Constitution.

*For remandment*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING, JACOBS and BRENNAN—5.

*For affirmance*—Justices HEHER and OLIPHANT—2.