SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**In re Protest of Contract for Retail Pharmacy Design, Construction, Start-Up & Operation, Request for Proposal No. UH-P20-006 (A-58/59-22) (088018) (088019)**

**Argued January 16, 2024 -- Decided May 23, 2024**

**PATTERSON, J., writing for a unanimous Court.**

The Court considers whether University Hospital constitutes a "state administrative agency" whose denial of two public procurement challenges was directly appealable to the Appellate Division pursuant to Rule 2:2-3(a)(2).

From 1979 to 2013, University Hospital was the primary teaching hospital of the University of Medicine and Dentistry in New Jersey (UMDNJ). Effective on July 1, 2013, the New Jersey Medical and Health Sciences Restructuring Act transferred the rights to all of the centers of UMDNJ, other than University Hospital, to Rutgers. The Legislature designated University Hospital to "be the principal teaching hospital of New Jersey Medical School and New Jersey Dental School, and any other Newark-based medical education program."

In October 2019, University Hospital issued a Request for Proposal (RFP) seeking "to enter a contract with one vendor to design, stock, staff and operate an on-site [p]harmacy at our Newark location." University Hospital received responsive proposals from petitioner Sumukha LLC and three other bidders. When the Hospital awarded the contract to a different bidder, Sumukha challenged the decision. University Hospital's hearing officer denied Sumukha's protest, and Sumukha filed an appeal in the Appellate Division. While that was pending, Sumukha filed a second protest challenging the decision to change the pharmacy's planned location. When University Hospital failed to respond to that second protest, Sumukha filed a second appeal in the Appellate Division.

The Appellate Division dismissed the appeal from Sumukha's first protest in a published opinion, concluding that University Hospital's determination was not directly appealable to the Appellate Division. 474 N.J. Super. 630, 639-44 (App. Div. 2023). It later dismissed Sumukha's second appeal. Both dismissals were without prejudice to Sumukha's right to file an action in the Law Division. The Court granted certification and consolidated the appeals. 254 N.J. 497 (2023).

1

**HELD:**  The Court finds no evidence in University Hospital's enabling statute that the Legislature intended the Hospital to be a "state administrative agency" under Rule 2:2-3(a)(2).  University Hospital's decisions and actions may not be directly appealed to the Appellate Division.

1.  Rule 2:2-3(a)(2) states in relevant part that "appeals may be taken to the Appellate Division as of right . . . to review final decisions or actions of any state administrative agency or officer."  The Appellate Division's authority to review a state administrative agency's final decision or action is exclusive.  (pp. 11-15)

2.  The plain language definitions of the words "state administrative agency" collectively convey that Rule 2:2-3(a)(2) does not apply to all public entities that are part of state government, but instead addresses executive entities that implement or administer particular legislation or constitutional requirements on the government's behalf.  Under separation of powers principles, it is the Legislature, not the Executive Branch or the agency itself, that defines an administrative agency's role.  The New Jersey Constitution requires that "[a]ll executive and administrative offices . . . be allocated by law among . . . twenty principal departments."  N.J. Const. art. V, § 4, ¶ 1.  If the Legislature has not allocated a state governmental entity to an executive branch department, that entity cannot be a "state administrative agency" under Rule 2:2-3(a)(2).  A state entity's enabling statute provides other guidance for a court applying Rule 2:2-3(a)(2).  The Legislature has, in some instances, expressly confirmed that all or certain actions by a particular agency are reviewable through direct appeal to the Appellate Division.  In addition, an enabling statute may grant a state governmental entity rulemaking authority or the authority to adjudicate contested cases, powers typically exercised by administrative agencies.  An enabling statute's provisions regarding the purpose, structure, governance, and authority of a state governmental entity may also provide compelling evidence of legislative intent. (pp. 15-21)

3.  Based on the plain language of Rule 2:2-3(a)(2), the Court adopts the following standard to guide a court determining whether a given state entity constitutes a "state administrative agency" whose final decisions and actions may be directly appealed to the Appellate Division.  First, informed by the entity's enabling statute, the court should consider what the Legislature intended the state entity to be.  If the entity is not a principal department of the Executive Branch or allocated by the Legislature to be within, or "in but not of," such a department, then it cannot be a "state administrative agency" under Rule 2:2-3(a)(2).  If the entity has been allocated to a principal department of the Executive Branch, then statutory provisions addressing the entity's composition, governance, financing, and degree of independence from that department are relevant to the inquiry.  Second, again informed by the enabling statute, the court should consider what the Legislature intended and empowered the public entity to do.  In order for a court conducting that inquiry to deem a public

2

entity a "state administrative agency" under <u>Rule</u> 2:2-3(a)(2), it must conclude that the Legislature intended that the entity administer or implement policy in one or more areas on behalf of state government. In addition, if the Legislature has empowered the entity to promulgate rules or adjudicate contested cases -- authority typically exercised by administrative agencies -- such a provision is a strong indication that the entity should be considered a "state administrative agency" for purposes of <u>Rule</u> 2:2-3(a)(2). (pp. 21-23)

4. The Court reviews in detail the text of the Restructuring Act, University Hospital's enabling statute. The Legislature neither placed the Hospital in an executive department nor declared it to be "in but not of" such a department, which itself is sufficient to conclude that the Hospital is not a state administrative agency. Application of the practical test adopted in the Court's opinion further supports that conclusion. Considering, first, what the Legislature intended University Hospital to be, the Court notes that the Hospital has a significant degree of independence in its management and operations and that its structure and governance bear little resemblance to those of a state administrative agency. The first factor in the test therefore supports the conclusion that the Hospital does not meet the requirements of <u>Rule</u> 2:2-3(a)(2). Turning to what the Legislature intended and empowered University Hospital to do, the Court notes that the Legislature did not charge the Hospital to implement or administer the State's healthcare policies generally, or any aspect of those policies. Nor did it give the Hospital authority typically granted to an administrative agency. Conversely, the Legislature granted the Hospital not only significant operational independence, but also a unique power that it has not granted to any state administrative agency -- the power to offer itself for sale. <u>See</u> N.J.S.A. 18A:64G-6.1d. In short, University Hospital is not a "state administrative agency" under <u>Rule</u> 2:2-3(a)(2). The Court affirms the dismissal of the appeals, without prejudice to Sumukha's right to file actions in the Law Division. (pp. 23-31)

**AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES SOLOMON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE PATTERSON's opinion.**

# SUPREME COURT OF NEW JERSEY
## A-58/59 September Term 2022
## 088018 and 088019

In re Protest of Contract for
Retail Pharmacy Design, Construction,
Start-Up and Operation, Request for
Proposal No. UH-P20-006.

In re Sumukha LLC Challenge
of Post-Award Changes to
RFP UH-P20-006.

On certification to the Superior Court,
Appellate Division, whose opinion in A-58-22
is reported at 474 N.J. Super. 630 (App. Div. 2023).

| Argued | Decided |
|---|---|
| January 16, 2024 | May 23, 2024 |

Robert A. Wiygul argued the cause for appellant Sumukha LLC (Hangley Aronchick Segal Pudlin & Schiller, attorneys; Robert A. Wiygul, Jason A. Levine, and Nicholas J. Bellos of the Pennsylvania bar, admitted pro hac vice, on the briefs).

Peter Slocum argued the cause for respondent University Hospital (Lowenstein Sandler, attorneys; Peter Slocum and Christopher Porrino, on the briefs).

Sara M. Gregory, Assistant Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General and Sara M. Gregory, of counsel, and Francis X. Baker, Deputy Attorney General, on the brief).

1

Jeffrey S. Chiesa submitted a brief on behalf of respondent Shields Pharmacy of University, LLC (Chiesa Shahinian & Giantomasi, attorneys; Jeffrey S. Chiesa, Ronald L. Israel, and Brian P. O'Neill, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

Pursuant to Rule 2:2-3(a)(2), appeals may be taken as of right to the Appellate Division "to review final decisions or actions of any state administrative agency or officer."  In these consolidated appeals, the Court determines whether University Hospital constitutes a "state administrative agency" whose denial of two public procurement challenges was directly appealable to the Appellate Division.

University Hospital rejected petitioner Sumukha LLC's bid to plan, construct, and operate a retail pharmacy on the Hospital's property.  It awarded the pharmacy contract to another bidder.  University Hospital's hearing officer denied Sumukha's protest of the Hospital's decision.  Sumukha filed a notice of appeal in the Appellate Division, seeking to challenge University Hospital's final decision denying the contract protest.  It later filed a second protest regarding the Hospital's contract award, which University Hospital also denied.

The Appellate Division dismissed Sumukha's appeal of University Hospital's denial of Sumukha's first protest.  In re Protest of Cont. for Retail

2

Pharmacy, 474 N.J. Super. 630, 639-44 (App. Div. 2023).  The appellate court concluded that the Legislature did not make University Hospital a state administrative agency and dismissed the appeal without prejudice to Sumukha's right to bring an action in the Law Division challenging the Hospital's decision.  Id. at 632-33.  Sumukha also appealed University Hospital's denial of its second protest, and the Appellate Division dismissed without prejudice Sumukha's second appeal.

We granted Sumukha's petitions for certification.  We find no evidence in University Hospital's enabling statute that the Legislature intended the Hospital to be a "state administrative agency" under Rule 2:2-3(a)(2).  We hold that University Hospital's decisions and actions may not be directly appealed to the Appellate Division, and we affirm the Appellate Division's dismissal of Sumukha's appeals without prejudice to Sumukha's right to file an action in the Law Division challenging University Hospital's public procurement decisions.

I.

A.

Sumukha, doing business as Bergen Rx Services Corporation, is a provider of pharmacy services in Newark.  University Hospital is a teaching hospital located in Newark that delivers medical care, including acute care and

3

trauma services.  From 1979 to 2013, it was the primary teaching hospital of the University of Medicine and Dentistry in New Jersey (UMDNJ).

On August 22, 2012, the Legislature passed the New Jersey Medical and Health Sciences Restructuring Act (Restructuring Act).  L. 2012, c. 45.  Effective on July 1, 2013, the Restructuring Act transferred "the rights to all of the schools, institutes, and centers" of UMDNJ, "other than . . . University Hospital" to Rutgers, The State University.  Id. § 3(a) (codified at N.J.S.A. 18A:65-94(a)).  The Legislature designated University Hospital to "be the principal teaching hospital of New Jersey Medical School and New Jersey Dental School, and any other Newark-based medical education program."  Id. § 14(a) (codified at N.J.S.A. 18A:64G-6.1a(a)).

On October 25, 2019, University Hospital issued a Request for Proposal (RFP) seeking "to enter a contract with one vendor to design, stock, staff and operate an on-site [p]harmacy at our Newark location."  The RFP stated that the proposed pharmacy would be constructed in the Hospital's main lobby to serve "patients, employees and [the] public."  In its RFP, University Hospital advised potential bidders that its Executive Director's final decision concerning all disputes about contract award rescission, contract interpretation, contractor performance and/or reduction, suspension, or termination "shall be

4

deemed a final agency action reviewable by the Superior Court of New Jersey, Appellate Division."

University Hospital received responsive proposals to the RFP from Sumukha, Shields Pharmacy of University, LLC (Shields), and two other bidders. Its evaluation committee ranked Shields first with respect to the two criteria that it used to compare the bids. On September 24, 2020, the Hospital's Board of Directors adopted a resolution awarding the pharmacy contract to Shields.

B.

1.

Sumukha protested University Hospital's notice of intent to award the contract to Shields, alleging that Shields had a conflict of interest, that Shields had understated the labor costs of operating the pharmacy in its bid, and that the Hospital's analysis of the competing bids was predicated on miscalculations.

In a final decision, University Hospital's hearing officer denied Sumukha's protest. The hearing officer concluded that University Hospital was not bound by statutes or regulations governing procurement and contract awards for state and local governmental entities, and that Sumukha had failed to provide any legal or equitable basis for the relief sought. The hearing

5

officer also denied Sumukha's application for a stay of University Hospital's award of the contract to Shields.

Sumukha filed a Notice of Appeal, contesting the hearing officer's denial of its first protest in the Appellate Division. The Appellate Division denied Sumukha's application for a stay and granted Shields' motion to intervene.[1]

Prior to oral argument in Sumukha's first appeal, Sumukha filed a second protest in connection with University Hospital's RFP. In that protest, Sumukha objected to University Hospital's decision, in consultation with Shields after the contract was awarded, to change the location of the proposed on-site pharmacy from the Hospital's main lobby to an adjacent building. Sumukha alleged that University Hospital improperly altered the pharmacy's location after the award, and that its decision constituted further evidence of conflicts of interest and favoritism in the pharmacy project.

Sumukha advised University Hospital that if it did not respond to Sumukha's protest of the change in the pharmacy's location, Sumukha would deem that protest denied. University Hospital did not respond. Sumukha filed

---

[1] After the Appellate Division granted Shields' motion to intervene, Shields appeared before the Appellate Division to address the merits of University Hospital's decision awarding it the pharmacy contract. Before this Court, Shields took no position on the question raised by this appeal.

a second appeal challenging the denial of its protest of the change in the pharmacy's location.

2.

In a published opinion addressing Sumukha's first protest, the Appellate Division noted that in the Restructuring Act, University Hospital's enabling statute, the Hospital was not allocated to an executive department in accordance with Article V, Section 4, Paragraph 1 of the New Jersey Constitution, and that it does not meet the definition of a "state agency" or "agency" under N.J.S.A. 52:14B-2 for purposes of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -31. In re Protest, 474 N.J. Super. at 639-41. The appellate court observed that in the Restructuring Act, the Legislature did not confer on University Hospital the authority to promulgate regulations or make quasi-judicial decisions, and that the Act did not provide that the Hospital's decisions would be reviewable as final agency decisions. Id. at 641-42. The court also noted that the Act gave University Hospital a greater degree of autonomy than is generally given to state administrative agencies. Id. at 642-43 (citing N.J.S.A. 18A:64G-6.1d(a), -6.1(e)(7), -6.1e(a) and (b)). It found no support in the plain language of the Restructuring Act for Sumukha's argument that Hospital constitutes a "state administrative agency" under Rule 2:2-3(a)(2). Id. at 638-43.

7

The Appellate Division accordingly dismissed the appeal regarding Sumukha's first protest without prejudice to Sumukha's right to bring an action in the Law Division. Id. at 643-44. It did not decide whether University Hospital must comply with state statutes and regulations governing public procurement and contract awards, or otherwise address the merits of Sumukha's challenge to University Hospital's award of the pharmacy contract to Shields. Ibid.

University Hospital then moved to dismiss Sumukha's second appeal, in which Sumukha had challenged the denial of its protest of the Hospital's post-award change in the location of the proposed pharmacy. The Appellate Division dismissed that appeal without prejudice to Sumukha's right to file an action in the Law Division regarding its second challenge.

3.

Sumukha filed petitions for certification in both appeals and moved to consolidate the appeals. We granted both petitions and consolidated the appeals. 254 N.J. 497 (2023). We also granted the Attorney General's application to participate as amicus curiae.

## II.

### A.

Sumukha contends that a public entity should be deemed a "state administrative agency" under Rule 2:2-3(a)(2) if (1) its decisions or actions would have been challenged by one of the traditional prerogative writs prior to the 1947 New Jersey Constitution and (2) it is a "state" entity. Applying that test, Sumukha contends that because public procurement challenges were traditionally asserted by means of a writ of certiorari, and University Hospital constitutes a state public entity, the Hospital is a "state administrative agency" whose decisions are directly appealable to the Appellate Division.

### B.

University Hospital proposes a different test to determine whether there is a right to direct appeal under Rule 2:2-3(a)(2). It contends that such a determination requires the court to (1) consider what the state entity at issue is; (2) consider what that state entity does; and (3) find that a state entity is a "state administrative agency" only if the entity administers an aspect of government on behalf of the sovereign. University Hospital argues that it does not meet that standard.

9

C.

Amicus curiae the Attorney General views the Appellate Division's decision to comport with the plain language, structure, and purpose of Rule 2:2-3(a)(2); to be consistent with this Court's past application of the term "state administrative agency"; and to properly construe the Restructuring Act's provisions regarding University Hospital.

III.

A.

The New Jersey Constitution charges this Court to "make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts." N.J. Const. art. VI, § 2, ¶ 3. "Inherent in this Court's 'power to make rules concerning the administration, practice and procedure of the courts of this State' is the broad power to interpret court rules." State v. Tier, 228 N.J. 555, 561 (2017) (quoting State v. Leonardis, 71 N.J. 85, 108-09 (1976)).

"Our review of the meaning or scope of a court rule is de novo; we do not defer to the interpretations of the trial court or Appellate Division unless we are persuaded by their reasoning." Ibid. In that review, we apply "ordinary principles of statutory construction to interpret the court rules." DiFiore v. Pezic, 254 N.J. 212, 228 (2023) (quoting State v. Robinson, 229

10

N.J. 44, 67 (2017)). "We begin with the plain language of the rule, and 'ascribe to the [words of the rule] their ordinary meaning and significance . . . and read them in context with related provisions so as to give sense to the [court rules] as a whole." Ibid. (alterations and omission in original) (quoting Wiese v. Dedhia, 188 N.J. 587, 592 (2006)).

B.

1.

Rule 2:2-3(a)(2) was adopted following a procedural reform initiated by the framers of the 1947 New Jersey Constitution. The Constitution superseded the traditional prerogative writs by which litigants had long challenged decisions or actions -- the writs of certiorari, mandamus, quo warranto, and prohibition -- and provided that "in lieu thereof, review, hearing and relief shall be afforded in the Superior Court, on terms and in the manner provided by rules of the Supreme Court, as of right, except in criminal causes where such review shall be discretionary." N.J. Const. art. VI, § 5, ¶ 4. The Constitution thus conferred on the Court the authority to allocate claims that had previously been maintained by prerogative writ to a division of the Superior Court for review. See ibid.

Shortly after the adoption of the 1947 Constitution, the Court promulgated a court rule that addressed, among other issues, challenges to

11

decisions or actions of state administrative agencies that had historically been asserted by writ of certiorari. As Justice Nathan Jacobs observed in the wake of the constitutional reform, "[u]nder the old practice review of determinations by State Administrative Agencies was generally by application for writ of certiorari," but a court rule "replaces this by providing that review of final decisions of State Administrative Agencies shall be by appeal to the Appellate Division." Nathan L. Jacobs, <u>Procedure in Lieu of Prerogative Writs</u>, 2 <u>Rutgers L. Rev.</u> 34, 37 (Special Issue, 1948); <u>see also</u> <u>Cent. R.R. Co. v. Dep't of Pub. Utils.</u>, 7 N.J. 247, 258 (1951) (noting that the constitutional mandate of Article VI, Section 5, Paragraph 4 of the New Jersey Constitution "was complied with, resulting in the adoption by this court of <u>Rule</u> 3:81 and subsequent amendments thereto").

The term at the center of this appeal, "state administrative agency," appeared in the original version of the court rule. Effective on September 15, 1948, <u>Rule</u> 3:81-8 provided that "[r]eview of the final decision or action of any State Administrative Agency shall be by appeal to the Appellate Division." <u>Rule</u> 4:88-8, which replaced <u>Rule</u> 3:81-8, included the same language. <u>See</u> <u>R.</u> 4:88-8 ("Review of the final decision or action of any state administrative agency . . . shall be by appeal to the Appellate Division."); <u>Close v. Kordulak Bros.</u>, 44 N.J. 589, 596 (1965) (noting that <u>Rule</u> 4:88-8 replaced <u>Rule</u> 3:81-8).

12

Effective on September 5, 1972, the Court adopted Rule 2:2-3, which addresses appeals to the Appellate Division from final judgments, decisions, and actions. At issue is subsection (a), concerning appeals as of right, which states that,

> [e]xcept as otherwise provided by R. 2:2-1(a)(3) (final judgments appealable directly to the Supreme Court), and except for appeals from a denial by the State Police of an application to make a gun purchase under a previously issued gun purchaser card, which appeals shall be taken to the designated gun permit judge in the vicinage, appeals may be taken to the Appellate Division as of right
>
> > (1) from final judgments of the Superior Court trial divisions, or the judges thereof sitting as statutory agents; the Tax Court; and in summary contempt proceedings in all trial courts except municipal courts;
> >
> > (2) to review final decisions or actions of any state administrative agency or officer, and to review the validity of any rule promulgated by such agency or officer excepting matters prescribed by R. 8:2 (tax matters) and matters governed by R. 4:74-8 (Wage Collection Section appeals), except that review pursuant to this subparagraph shall not be maintainable so long as there is available a right of review before any administrative agency or officer, unless the interest of justice requires otherwise;
> >
> > (3) in such cases as are provided by law.
>
> [R. 2:2-3(a) (emphases added).]

Rule 2:2-3, like its prior iterations, thus requires a court to determine whether the state entity that issued the disputed decision or action is a "state administrative agency." If it is such an agency, the court must then consider whether the decision or action of that agency is "final." R. 2:2-3(a)(2); see also In re CAFRA Permit No. 87-0959-5, 152 N.J. 287, 299 (1997) (discussing criteria for assessing the finality of administrative action); D.J. Miller & Assocs. v. Dep't of Treasury, 356 N.J. Super. 187, 191 (App. Div. 2002) ("[S]ome actions or inactions of State agencies and officers do not constitute 'administrative' agency action or inaction that is subject to review by the Appellate Division under Rule 2:2-3(a)(2).").

Under Rule 2:2-3(a)(2), the Appellate Division's authority to review a state administrative agency's final decision or action is exclusive. Prado v. State, 186 N.J. 413, 422 (2006); Pascucci v. Vagott, 71 N.J. 40, 52 (1976). Consequently, an appeal of such a decision or action "must lie in the Appellate Division unless the matter is a condemnation or inverse condemnation appeal arising from state agency action and, therefore, [is] cognizable in the Law Division in the first instance." Infinity Broad. Corp. v. N.J. Meadowlands Comm'n., 187 N.J. 212, 227 (2006). Nonetheless, "the Appellate Division retains the discretion, in an appropriate case, to retain jurisdiction in an appeal from the action of a state agency, but to refer the matter to the Law Division or

14

to the agency for such additional fact-finding as it deems necessary to a just outcome." Ibid.

2.

When the Court adopted Rules 3:81-8, 4:88-8, and 2:2-3(a)(2), it chose the term "state administrative agency" to describe a discrete category of entities whose final decisions and actions are subject to direct appellate review in the Appellate Division. That term is not identical to the term "state agency," defined for purposes of the APA to include the principal executive departments "and all boards, divisions, commissions, agencies, departments, councils, authorities, offices or officers within any such departments now existing or hereafter established and authorized by statute to make, adopt or promulgate rules or adjudicate contested cases, except the office of the Governor." N.J.S.A. 52:14B-2. It is also distinct from the terms "public agency" and "agency," defined for purposes of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, to include categories of public entities enumerated in OPRA's definitional provision, N.J.S.A. 47:1A-1.1. We thus construe a term distinct from those that have been defined by the Legislature.

To determine the meaning of "state administrative agency" within Rule 2:2-3(a)(2), our inquiry begins with the Rule's plain language. The word "agency" denotes "[a]n official body, esp. within the government, with the

15

authority to implement and administer particular legislation." Black's Law Dictionary 77-78 (11th ed. 2019). A "state agency" is defined as "[a]n executive or regulatory body of a state." Id. at 78. The word "administrative" means "[o]f, relating to, or involving the work of managing a company or organization." Id. at 54. An "administrative action" is defined as "[a] decision or an implementation relating to the government's executive function or a business's management." Id. at 55. Those words collectively convey that Rule 2:2-3(a)(2) does not apply to all public entities that are part of state government, but instead addresses executive entities that implement or administer particular legislation or constitutional requirements on the government's behalf.

Under separation of powers principles, it is the Legislature, not the Executive Branch or the agency itself, that defines an administrative agency's role. As this Court recognized shortly after the adoption of the 1947 Constitution, "the legislature may delegate to an administrative body the exercise of a limited portion of its legislative power with respect to some specific subject matter," but "such delegation of legislative power must always prescribe the standards that are to govern the administrative agency in the exercise of the powers thus delegated to it." State v. Traffic Tel. Workers Fed'n of N.J., 2 N.J. 335, 353 (1949).

The New Jersey Constitution requires that "[a]ll executive and administrative offices, departments, and instrumentalities of the State government, including the offices of Secretary of State and Attorney General, and their respective functions, powers and duties . . . be allocated by law among and within not more than twenty principal departments." N.J. Const. art. V, § 4, ¶ 1. As the Court has observed, that constitutional mandate is satisfied "when the Legislature creates an agency and places it 'in' a department of the Executive Branch," or declares that agency to be "in but not of" such a department. In re Plan for Abolition of Council of Affordable Hous., 214 N.J. 444, 462 (2013).

A provision in an enabling statute regarding the allocation of the state entity is therefore directly relevant to the procedure for an appeal. If the Legislature has not allocated a state governmental entity to an executive branch department, that entity cannot be a "state administrative agency" under Rule 2:2-3(a)(2). N.J. Const. art. V, § 4, ¶ 1; see also Vas v. Roberts, 418 N.J. Super. 509, 517 (App. Div. 2011) (rejecting the contention that the Legislature itself constitutes a "state administrative agency," given that "agencies whose actions have been held to be reviewable in the first instance by the Appellate Division are those located within the principal departments in the executive branch of state government").

17

A state entity's enabling statute provides other guidance for a court applying Rule 2:2-3(a)(2). The Legislature has, in some instances, expressly confirmed that all or certain actions by a particular agency are reviewable through direct appeal to the Appellate Division. See, e.g., N.J.S.A. 10:5-21 (final orders of the Director of the Division on Civil Rights); N.J.S.A. 39:10-20 (final determinations by the chief administrator of the Motor Vehicle Commission); N.J.S.A. 24:6I-7(e) (denials of permit applications by the Cannabis Regulatory Commission); N.J.S.A. 13:20-26 (decisions or actions of the Highlands Water Protection and Planning Council); N.J.S.A. 45:4B-5(f) (declaratory rulings of the Joint Committee of Architects and Engineers "shall be deemed a final decision or action subject to review in the Appellate Division of the Superior Court"); N.J.S.A. 49:5-17(a) ("Any person aggrieved by any act, determination, rule, regulation, or order or any other action of the [Chief of the Bureau of Securities] pursuant to [the New Jersey Corporation Takeover Bid Disclosure Law] may appeal to the Appellate Division of Superior Court."); N.J.S.A. 4:1-34 (persons or entities "aggrieved by any act, proceeding, rule, order, regulation, decision or determination of the director of the Office of Milk Industry . . . shall be entitled to judicial review . . . in the Appellate Division").

In addition, an enabling statute may grant a state governmental entity rulemaking authority or the authority to adjudicate contested cases, powers typically exercised by administrative agencies. See, e.g., N.J.S.A. 5:12-107(a)(1) (providing that the Casino Control Commission "shall promulgate regulations for the conduct of hearings it is authorized to conduct" and shall refer certain matters to the Office of Administrative Law); N.J.S.A. 11A:2-6(a), (d) (authorizing the Civil Service Commission to "render the final administrative decision on appeals concerning permanent career service employees or those in their working test period" and to "[a]dopt and enforce rules . . . to effectively implement a comprehensive personnel management system"); N.J.S.A. 18A:4-15 (stating that the State Board of Education "shall make and enforce, and may alter and repeal, rules for its own government and for implementing and carrying out the school laws of this state under which it has jurisdiction"). Indeed, rulemaking authority was granted to UMDNJ itself prior to the Restructuring Act; under N.J.S.A. 18A:64G-6(q) (2006), now repealed, UMDNJ's board of trustees had "the power and duty" to "[a]dopt bylaws and make and promulgate such rules, regulations and orders, not inconsistent with the provisions of this act as are necessary and proper for the administration and operation of [UMDNJ] and to implement the provisions of this act."

19

An enabling statute's provisions regarding the purpose, structure, governance, and authority of a state governmental entity may also provide compelling evidence of legislative intent. In Infinity Broadcasting, we considered the Meadowlands Commission a state administrative agency given the enabling statute's declarations that the Commission is "a political subdivision of the State established as an instrumentality exercising public and essential governmental functions," and that the exercise of the Commission's powers "shall be deemed and held to be an essential governmental function of the State." 187 N.J. at 222 n.2 (quoting N.J.S.A. 13:17-5). In Hartz Mountain Industries, Inc. v. New Jersey Sports & Exposition Authority, the Appellate Division concluded that the New Jersey Sports and Exposition Authority, by virtue of its enabling statute, had "indicia of a state agency," including that the Authority's "legislative purpose is stated in terms of the development of sports and exposition and ancillary facilities throughout the State"; that it was "constituted as a body corporate and politic within the Department of Community Affairs" with a membership that included state officers serving as ex officio members and gubernatorial appointees; and that "[i]ts permissible projects include[d] a wide range of sport, entertainment, exposition, educational and related uses throughout the State." 369 N.J. Super. 175, 187 (App. Div. 2004) (citing N.J.S.A. 5:10-2, -4(a) and (b), -6(a)).

Accordingly, courts applying Rule 2:2-3(a)(2) to state public entities should refer to the entity's enabling statute to determine the Legislature's intent.

3.

Based on the plain language of Rule 2:2-3(a)(2), we adopt the following standard to guide a court determining whether a given state entity constitutes a "state administrative agency" whose final decisions and actions may be directly appealed to the Appellate Division.[2]

---

[2] We do not agree with Sumukha's argument, untethered to the language of Rule 2:2-3(a)(2), that any challenge to a state entity's final decision or action that would have been asserted by prerogative writ prior to the 1947 Constitution may be brought by direct appeal to the Appellate Division under Rule 2:2-3(a)(2). Under pre-1947 New Jersey practice, the prerogative writs were invoked to contest a vast array of official decisions and actions, many of which were issued by entities that did not constitute state administrative agencies. See generally 19 N.J. Practice, Skills and Methods §§ 4:2 to 4:6, at 848-55 (rev. 3d ed. 2005). Even the traditional writ of certiorari, which Sumukha contends would have been the prerogative writ used before 1947 to assert a claim analogous to its procurement challenge, was not confined to settings involving state administrative agencies. See McKenna v. N.J. Highway Auth., 19 N.J. 270, 274-75 (1955) (noting that the writ of certiorari was "extensively used to review the validity of ordinances and of by-laws, which are clearly merely legislative in character and to review various other acts of officers, boards and tribunals where it is difficult to discover the judicial nature of the proceedings held subject to the review" (internal quotation and alterations omitted)); Application of LiVolsi, 85 N.J. 576, 594 n.18 (1981) (stating that the function of the writ of certiorari was to "review the actions of inferior tribunals such as administrative agencies" (citing McKenna, 19 N.J. at 274-75)). The historical use of a prerogative writ to

21

First, informed by the entity's enabling statute, the court should consider what the Legislature intended the state entity to be. If the entity is not a principal department of the Executive Branch or allocated by the Legislature to be within, or "in but not of," such a department, then it cannot be a "state administrative agency" under Rule 2:2-3(a)(2). See N.J. Const. art. V, § 4, ¶ 1; In re Plan for Abolition of Council of Affordable Hous., 214 N.J. at 462. If the entity has been allocated to a principal department of the Executive Branch, then statutory provisions addressing the entity's composition, governance, financing, and degree of independence from that department are relevant to the inquiry. See Infinity Broad., 187 N.J. at 222-26; Hartz Mountain, 369 N.J. Super. at 187; Cohen v. Bd of Trs., UMDNJ, 240 N.J. Super. 188, 193 (Ch. Div. 1989).

Second, again informed by the enabling statute, the court should consider what the Legislature intended and empowered the public entity to do.

In order for a court conducting that inquiry to deem a public entity a "state administrative agency" under Rule 2:2-3(a)(2), it must conclude that the Legislature intended that the entity administer or implement policy in one or more areas on behalf of state government. See Vas, 418 N.J. Super. at 516-17

_____

challenge a category of governmental decisions does not resolve the issue before the Court; instead, the plain language of Rule 2:2-3(a)(2) controls.

22

(noting the importance of an entity's authority to implement legislation in determining whether it is an administrative agency); Black's Law Dictionary 77-78 (11th ed. 2019) (defining an "agency" in part based on its role in implementing and administering "particular legislation"). That requirement distinguishes state administrative agencies from a broad range of entities that are charged to deliver important services to the public in furtherance of legislative policy, but not to implement or administer such policy. In some settings, provisions of the enabling statute defining the state governmental entity's mission and powers reveal the Legislature's intent to cede to that entity limited authority to implement a particular statute. In other cases, such provisions signal an intent that the entity serve a purpose that is simply not administrative.

In addition, if the Legislature has empowered the entity to promulgate rules or adjudicate contested cases -- authority typically exercised by administrative agencies -- such a provision is a strong indication that the entity should be considered a "state administrative agency" for purposes of Rule 2:2-3(a)(2).

C.

With those principles in mind, we consider the text of the Restructuring Act, University Hospital's enabling statute.

23

1.

In the Restructuring Act, the Legislature found "that the present organization of UMDNJ's substantial assets is not the best structure to maximize the effectiveness of the State's investment in medical, dental, nursing and health sciences education, associated research and health care." N.J.S.A. 18A:64M-2(t). It prescribed the purpose, governance, and funding of University Hospital. N.J.S.A. 18A:64G-6.1a to -6.1i.

The Act provides in part that

> University Hospital shall be the principal teaching hospital of New Jersey Medical School and New Jersey Dental School, and any other Newark-based medical education program. University Hospital is hereby established as a body corporate and politic and shall be treated and accounted for as a separate non-profit legal entity from Rutgers, The State University, and its assets, liabilities, and funds shall not be consolidated or commingled with those of Rutgers, The State University. The exercise by University Hospital of the powers conferred by this act shall be deemed to be public and essential government functions necessary for the welfare and health of the State and the people of New Jersey and University Hospital shall be an instrumentality of the State.
>
> [N.J.S.A. 18A:64G-6.1a(a).]

The Legislature mandated that State funding of University Hospital "be sufficient to maintain the level of community services provided on the effective date of [the Restructuring Act] and to maintain University Hospital as

24

an acute care facility and trauma center." N.J.S.A. 18A:64G-6.1a(d). It created a thirteen-member board of directors, which operates the Hospital. N.J.S.A. 18A:64G-6.1(a). The Board exercises statutory authority in certain personnel, contracting, funding, and grant matters, among others. N.J.S.A. 18A:64G-6.1(e).

The Legislature granted to University Hospital authority that is extraordinary for a New Jersey public entity: subject to statutory requirements, the Hospital has the power to offer itself for sale. N.J.S.A. 18A:64G-6.1d. University Hospital must obtain approval from the Superior Court of New Jersey and the Commissioner of Health and Senior Services "prior to entering into a transaction that results in the acquisition of the hospital," and it must comply with provisions of other laws identified in the statute. N.J.S.A. 18A:64G-6.1d(a), (d), (e). In the event of a proposed sale of University Hospital, "[t]he Attorney General, in consultation with the Commissioner of Health and Senior Services, shall adopt regulations pursuant to [the APA] to carry out the purposes of" the Restructuring Act's provision authorizing the Hospital's sale. N.J.S.A. 18A:64G-6.1d(b). The statute sets forth criteria to guide the Attorney General's determination whether "the proposed acquisition is in the public interest, meaning that appropriate steps have been taken to safeguard the value of the hospital's public assets and to

25

ensure that any proceeds from the proposed acquisition are irrevocably dedicated for appropriate charitable health care purposes" as defined by the Restructuring Act.  N.J.S.A. 18A:64G-6.1d(c).  If the statutory requirements are met, the Hospital may be sold.  N.J.S.A. 18A:64G-6.1d.

Even if it does not opt to be sold, University Hospital may enter into a contract with a third-party nonprofit corporation to operate and manage the Hospital, subject to statutory requirements including the Department of Health and Human Services' approval of the management contract.  N.J.S.A. 18A:64G-6.1e.  Under the Restructuring Act, a proposed management agreement between University Hospital and a nonprofit corporation is evaluated in part based on whether the Hospital, if managed by the nonprofit corporation, "will continue its public mission and commitment to provide a comprehensive healthcare program and services to the greater Newark community, including acute care, and emergency and other essential services provided by the hospital."  N.J.S.A. 18A:64G-6.1e(a)(1).  In the event that University Hospital enters into a management contract with a nonprofit corporation, such a contract "shall be liberally construed" to promote goals identified by the Legislature.  N.J.S.A. 18A:64G-6.1i(a).  The contracted manager is afforded broad statutory authority, subject to the requirement that the Hospital remain "the principal teaching hospital of the New Jersey Medical

26

School, the New Jersey Dental School, and any other Newark-based medical education program," as well as to mandates addressing faculty appointments and the status of bargaining unit employees. N.J.S.A. 18A:64G-6.1i(b), (c).

Thus, the Legislature envisioned not only that University Hospital may arrange to be sold to another entity in certain circumstances, but that it can contract to be managed by a nonprofit entity subject to statutory constraints. N.J.S.A. 18A:64G-6.1d, -6.1e, -6.1i.

## 2.

Informed by those provisions of the Restructuring Act, we apply the standard adopted in this opinion to determine whether University Hospital is a "state administrative agency" under Rule 2:2-3(a)(2).[3]

---

[3] Sumukha relies on a footnote in the procedural history of Shim v. Rutgers, in which this Court commented that "an appeal from a final decision by Rutgers in respect of a student's domicile must lie in the Appellate Division pursuant to R. 2:2-3(a)(2)." 191 N.J. 374, 383 n.4 (2007). Its reliance is misplaced. The action in Shim, an appeal of Rutgers' denial of a student's application for in-state tuition, was filed in the Law Division. Id. at 383. Neither party argued in any court that Rutgers' determination should instead have been directly appealed to the Appellate Division, and neither the Appellate Division nor this Court vacated the Law Division's judgment on the ground that it was not the proper venue for the dispute. See id. at 378-84; Shim v. Rutgers, 385 N.J. Super. 200, 205-08 (App. Div. 2007). The comment in the Court's recitation of the procedural history was not part of the Court's analysis and was not germane to its decision in that case. Accordingly, it constituted dictum, not precedential authority. See State v. Rose, 206 N.J. 141, 183 (2011).

27

Although University Hospital is designated "a body corporate and politic" and "an instrumentality of the State," N.J.S.A. 18A:64G-6.1a(a), the Legislature neither placed the Hospital in an executive department nor declared it to be "in but not of" such a department, which itself is sufficient to conclude that the Hospital is not a state administrative agency. See N.J. Const. art. V, § 4, ¶ 1; In re Plan for Abolition of Council of Affordable Hous., 214 N.J. at 462. University Hospital, unallocated to a principal department of the Executive Branch, does not meet the constitutional requirement for a state administrative agency.

Application of the practical test adopted in this opinion further supports that conclusion. Considering, first, what the Legislature intended University Hospital to be, the Legislature clearly envisioned that University Hospital would exercise a significant degree of independence in its management and operations. The Hospital's board of directors exercises governing authority in several important respects, including certain personnel matters, contracting authority, and control over its funds and grants. N.J.S.A. 18A:64G-6.1e. In addition, the structure and governance that the Legislature prescribed for University Hospital bears little resemblance to the structure and governance of a state administrative agency. The first factor in the test therefore supports the

28

conclusion that the Hospital does not meet the requirements of Rule 2:2-3(a)(2).

Next, we consider what the Legislature intended and empowered University Hospital to do.

The Hospital's mission is critical and clear: it exists "to provide a comprehensive healthcare program and services to the greater Newark community, including acute care, and emergency and other essential services provided by the hospital," N.J.S.A. 18A:64G-6.1e(a)(1), and to serve as "the principal teaching hospital of New Jersey Medical School and New Jersey Dental School, and any other Newark-based medical education program," N.J.S.A. 18A:64G-6.1a(a).

Notwithstanding the paramount importance of that mission to public health, the Legislature did not charge the Hospital to implement or administer the State's healthcare policies generally, or any aspect of those policies. See generally N.J.S.A. 18A:64G-6.1a to -6.1i. Nor did it give the Hospital authority typically granted to an administrative agency. Unlike UMDNJ as it was constituted under prior law, University Hospital was not granted rulemaking authority. See generally N.J.S.A. 18A:64G-6.1a to -6.1i. Nothing in the Restructuring Act gives the Hospital authority to adjudicate contested cases. Ibid. The comprehensive statutory scheme for the operation and

29

management of University Hospital reflects no legislative intent that the Hospital conduct activities typical of an administrative agency. Ibid.

Conversely, the Legislature granted to University Hospital not only significant operational independence, but also a unique power that it has not granted to any state administrative agency -- the power to offer itself for sale. N.J.S.A. 18A:64G-6.1d.

In short, the Legislature's provisions for University Hospital's authority and mission strongly indicate that the Hospital is not a state administrative agency. The second factor weighs in favor of a conclusion that University Hospital does not meet the standard of Rule 2:2-3(a)(2).

Accordingly, we hold that University Hospital is not a "state administrative agency" under Rule 2:2-3(a)(2). Under that Rule, Sumukha is not permitted to appeal the Hospital's decisions to the Appellate Division in the first instance.[4]

---

[4] University Hospital's statement in its RFP that certain final decisions related to the RFP would be deemed final agency actions reviewable by the Appellate Division was inaccurate. Clearly, a public entity that does not qualify as a "state administrative agency" under Rule 2:2-3(a)(2) does not have the authority to declare itself to be such an agency. University Hospital and other public entities that are not state administrative agencies under Rule 2:2-3(a)(2) should avoid giving potential bidders in public procurement incorrect advice as to the proper procedure to appeal their decisions.

We affirm the Appellate Division's dismissal of the appeals, without prejudice to Sumukha's right to file actions in the Law Division. We make no determination on the question whether University Hospital is subject to state procurement laws, or on any other issue related to the merits of Sumukha's challenges to the Hospital's decisions.

## IV.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICES SOLOMON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE PATTERSON's opinion.