848 A.2d 793 (2004)
369 N.J. Super. 175
HARTZ MOUNTAIN INDUSTRIES, INC., on its own behalf and on behalf of the joint venture known as "Expo Park," Plaintiff-Appellant,
v.
NEW JERSEY SPORTS & EXPOSITION AUTHORITY, The Mills Corporation, and Mack-Cali Realty Corporation, Defendants-Respondents.
Elliot Braha, individually and on behalf of a class of similarly situated members, Plaintiff-Appellant,
v.
New Jersey Sports & Exposition Authority, The Mills Corporation, and Mack-Cali Realty Corporation, Defendants-Respondents.
In the Matter of the NJSEA's Denial of the December 2, 2003, January 2, 2004, and February 5, 2004, Requests for Public Records Filed Pursuant to the Open Public Records Act ("OPRA"), N.J.S.A. 47:1-1 et seq. by Hartz Mountain Industries, Inc.
Superior Court of New Jersey, Appellate Division.
Argued April 27, 2004.
Decided May 14, 2004.
*795 Justin P. Walder, Roseland, and Irwin A. Horowitz, Secaucus, argued the cause for Hartz Mountain Industries, Inc. (Walder, Hayden & Brogan and Horowitz, Rubino & Patton, attorneys; Messrs. Walder and Horowitz, of counsel; Shalom D. Stone, D. Mark Leonard, and Asaad K. Siddiqi, on the brief).
Timothy J. O'Neill, Princeton, argued the cause for New Jersey Sports & Exposition Authority (Windels Marx Lane & Mittendorf, attorneys; Mr. O'Neill, of counsel and on the brief; Charles M. Fisher, Xan K. Desch, Craig D. Gottila, and Ellen M. Christoffersen, on the brief).
Michael R. Cole, Teaneck, argued the cause for The Mills Corporation and Mack-Cali Realty Corporation (DeCotiis, FitzPatrick, Cole & Wisler, attorneys; Mr. Cole, of counsel; Benjamin Clarke and Gregory J. Bevelock, on the brief).
Barry D. Epstein, Rochelle Park, argued the cause for Elliot Braha individually and on behalf of a class (Epstein Beirne, attorneys; Mr. Epstein and Alice Beirne, on the brief).
Peter J. Herzberg, Morristown, argued the cause for Westfield Corporation (Pitney, Hardin, Kipp & Szuch, attorneys; Mr. Herzberg, on the brief).
Before Judges PRESSLER, ALLEY and R.B. COLEMAN.
*794 The opinion of the court was delivered by PRESSLER, P.J.A.D. (retired and temporarily assigned on recall).
This litigation arises out of the award of a bid and subsequent contract by New Jersey Sports & Exposition Authority (NJSEA) to defendants The Mills Corporation and Mack-Cali Realty Corporation (MMC) for a massive multi-use development, denominated the Meadowlands Xanadu, to be constructed and operated at and around the Continental Arena site in the Hackensack meadowlands. The bid and contract award are challenged by the two unsuccessful finalists who also bid for the award of the development project, Hartz Mountain Industries, Inc. (Hartz) and Westfield Corporation (Westfield). The Xanadu project is also challenged by a taxpayer, Elliot Braha, a Jersey City retailer, on his own account and those similarly interested.
The challenges to the Xanadu project are multifaceted, multi-forum, and multiplicitous. Of the eight appeals now pending in this court, three of them are now before us. In Docket No. A-5255-02T3 Hartz appeals from a judgment of the Law Division in an action, in which Braha sought to intervene, raising issues arising under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1, and the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6, et seq., as well as a number of issues challenging the validity of the initial request for public bids (RFP), the procedures attendant upon the award of the bid, and the conduct of the ensuing protest hearing. The complaint was dismissed by order entered on May 1, 2003, essentially on the ground that Hartz failed to exhaust its administrative relief, the trial judge having also concluded that because NJSEA is a state agency, Hartz, in any case, should have brought its complaint in the Appellate Division pursuant to R. 2:2-3(a)(2) rather than in the trial court. In Docket No. A-708-03T3, Braha appeals the dismissal of his complaint by the Law Division in which he raised issues that the parties agree are substantially subsumed *796 by those that had been raised in the Hartz action. The Braha complaint was also dismissed on exhaustion grounds.
Finally, by way of preliminary procedural recitation, we note that of the remaining five appeals that are not now before us[1], three of them, Docket Nos. A-1169-03T3, 1218-03T3, and 1243-03T3, are individual challenges by Hartz, Braha, and Westfield, respectively, from the September 10, 2003, action of the NJSEA rejecting the bid protest against the MMC award which each brought, and two of them, Docket Nos. A-2657-03T3 and 2734-03T3, are individual challenges by Hartz and Westfield to the December 3, 2003, resolution of NJSEA authorizing its execution of the development agreement with MMC. The final appeal, A-3805-03T3, is a challenge by Hartz to decisions of NJSEA respecting its further document requests. Because we address in this opinion the global issue of document access, we sua sponte dismiss A-3805-03T3, which we consolidate for purposes of this opinion, as moot. The issues therein raised are subsumed by our holding here.
As to the appeals before us, we remand to the trial court for reconsideration of the OPRA issues in accordance with the directions in this opinion. In addition, since the merits have been fully briefed on appeal and because, for reasons we will set forth, we are satisfied that NJSEA is a state agency for purposes of appellate review, we consider the OPMA issues as if transferred to this court pursuant to R. 1:13-4. We also now address the question of NJSEA's status as a state administrative agency, affirming the trial judge's holding to that effect. We also address the question of the nature of the required hearing on the bid protest and the appropriate forum therefor, holding that the hearing is within the jurisdictional competence of NJSEA itself. Finally, as to the question of the correct statutory authorization for NJSEA's procurement process for the project in question, we hold that it is N.J.S.A. 5:10-21.2 that applies in the circumstances. We are, however, satisfied that all other issues raised by appellants must be considered or reconsidered by NJSEA following the new or supplemental bid protest hearing which we here direct.
We have chosen to proceed in this manner having concluded that as a matter of expedition and orderly proceeding, the issue of the documents, if any, to which the appellants are entitled in order fully and effectively to prosecute their bid protest but to which they have heretofore been denied access must be decided first. That is so because appellants have not only received additional documents from NJSEA following the protest hearings, but it also appears not unlikely that as a result of the OPRA proceedings we herein direct appellants may be accorded access to additional documents relevant to the bid protest. That being so, we are satisfied that they would also be entitled to a new or supplemental bid protest hearing, the question of a new or only supplemental hearing being in NJSEA's discretion. Beyond that, we also think it clear that before any new or supplemental hearing is held, the issue of the manner and type of hearing to which appellants are entitled must be decided, and the identity of the forum to which appeals from NJSEA's actions are to be brought must be clarified.
*797 We address first the OPRA issue. As we understand the record, appellants, and particularly Hartz, have made repeated requests for hundreds of NJSEA documents assertedly relevant to the RFP, the decision to award the bid to MMC, and the executed redevelopment agreement. We also understand that NJSEA has, from time to time, acceded to some of those requests and, as to the others, has prepared and delivered to Hartz a privilege log which states the basic reason for non-disclosure of each requested document. Hartz, in its initial complaint in the Law Division, sought access to withheld documents under OPRA. The Law Division, which dismissed the complaint prior to the holding of the protest hearings, was of the view that the challenges brought by Hartz in the Law Division were premature since the administrative relief afforded by NJSEA through the mechanism of the protest hearings had not yet been exhausted. The Law Division also opined that because NJSEA is a state agency subject to direct Appellate Division review pursuant to R. 2:2-3(a)(2), any legal issues not subject to exhaustion should be brought directly to this court. The Law Division viewed the OPRA demands, therefore, as cognizable in the first instance in this court. As an alternative ground for rejection of the OPRA claim, the Law Division opined that as a general proposition, the bid having been awarded but the development agreement not yet having been entered into because of ongoing negotiations, NJSEA was not obliged to afford Hartz access to any confidential financial information supplied by MMC.
We take a different view of the matter. To begin with we are satisfied that even if the denied OPRA request is made in connection with a proceeding pending before a state administrative agency whose final decisions are reviewable in the Appellate Division, it is the Law Division rather than the Appellate Division which, as a matter of cognizability and allocation of the court's business, should initially entertain the OPRA application. We are aware that N.J.S.A. 47:1A-6 provides for proceedings either in the Superior Court or before the Government Records Council and, moreover, that the statute does not expressly specify the Division of the Superior Court in which the proceeding should be filed if the judicial rather than the administrative route is chosen. We believe, however, that the Law Division must be the forum. We point out that the statute requires the OPRA challenge to "be heard in the vicinage where it is filed by a Superior Court Judge who has been designated to hear such cases...." The vicinage concept is relevant only to the trial courtsthe Appellate Division is a unified statewide courtit does not operate by vicinage. Moreover, it is our understanding that a trial judge has in fact been designated in each vicinage to hear OPRA cases consistently with the legislative scheme.
There are other more fundamental reasons for the allocation of OPRA hearings to the trial court. We think it plain that under OPRA, as under its predecessor statute, the Right to Know Law, N.J.S.A. 47:1A-2 to -4, repealed by L. 2001, c. 404,[2] the court is obliged, when a claim of confidentiality or privilege is made by the public custodian of the record, to inspect the challenged document in camera to determine the viability of the claim. See, e.g., Loigman v. Kimmelman, 102 N.J. 98, 505 A.2d 958 (1986). That inspection implies the necessity of recorded fact-finding *798 by the trial judge as well as the opportunity of the parties to address general principles relative to the claim of confidentiality and privilege, as well, perhaps, an opportunity to the government custodian to argue specifically, as part of the in camera review, why the document should be deemed privileged or confidential or otherwise exempt from the access obligation. These procedures, because they require verbatim recording and fact-finding are appropriately handled by a trial courtthey do not lend themselves to the essential review jurisdiction of the Appellate Division. See, e.g., Colon v. Tedesco, 125 N.J.Super. 446, 311 A.2d 393 (Law Div.1973). And see Allstate Ins. Co. v. Fortunato, 248 N.J.Super. 153, 159, 590 A.2d 690 (App.Div.1991), noting that even where Appellate Division's initial review is in accordance with the court's cognizability rules, it is both necessary and appropriate for the appellate court to refer to the trial court those issues requiring fact-finding and the making of a record.
We further note that on other occasions when a statute referred to initial proceedings in the Superior Court but did not specify the Division, this court has interpreted the legislative direction to accord with general and accepted principles of cognizability as established by the court rules, and, more particularly, R. 2:2-3(a). See, e.g., Bishop v. N.J. Sports & Exposition Authority, 168 N.J.Super. 533, 536-537, 403 A.2d 934 (App.Div.1979). In sum, as we have heretofore explained, the question of allocation of court business among the constitutional Divisions of the court is not jurisdictional in the subject-matter sense, but is rather a matter of expedition and organization referred by the Constitution to the rules adopted by the Supreme Court. N.J. Const. art. VI, § 3, ¶ 3. See, e.g., Equitable Life Mort. v. N.J. Div. of Taxation, 151 N.J.Super. 232, 237-238, 376 A.2d 966 (App.Div.), certif. denied, 75 N.J. 535, 384 A.2d 514 (1977).
We thus reconfirm the general propriety of the procedures followed in In re Readoption of N.J.A.C. 10A:23, 367 N.J.Super. 61, 72-75, 842 A.2d 207 (App. Div.2004), in which a citizens' group unsuccessfully sought numerous documents from the Department of Corrections in connection with its challenge to the Department's lethal injection regulations. The appellants followed two simultaneous paths in seeking access to those documents, as have appellants here. They filed a motion with this court for supplementation of the record to include the withheld documents, and they filed an OPRA suit in the Law Division. We referred the motion to settle the record for disposition in accordance with OPRA to the trial court, which then consolidated our referral with the OPRA action.[3] The trial judge in that case then reviewed all the disputed documents in camera based on the Department's specific claims of confidentiality, privilege, or other OPRA exemption, making a finding as to each, including a finding as to whether redactions that were made or could be made were appropriate. We are satisfied that the basic procedures followed in In re Readoption of N.J.A.C. 10A:23 must be followed here, and we remand to the Law Division for that purpose.
We add, however, the following directions. First, we point out that N.J.S.A. 47:1A-6 requires a summary or expedited proceeding and casts the burden to justify the withholding of documents on the public agency. We direct, therefore, that the Law Division, on remand, set an expedited *799 and summary schedule for the conduct and completion of the OPRA proceedings, including an in camera review of each document and fact-finding and legal conclusions as to each. We are also of the view that there must be closure to the document requests of appellants. They have had substantial time in which to frame and make their requests, have already made numerous requests in a variety of forms, and their opportunity for any further requests, at least in respect of the Xanadu project and anything connected therewith, must be deemed to have been fully exercised at this time. No document request not already made should, therefore, be entertained.
We are also aware that appellants charge NJSEA with having given them insufficient information in its privilege log respecting the basis of the privilege-confidentiality-exemption claim vis-à-vis each document. We leave that dispute to the trial court. Our final observation relates to the trial court's alternative ground for rejecting the OPRA claim, namely the need for confidentiality of the financial information submitted by a bidder with whom the agency is still negotiating. In considering this claim, the trial court should take into account that since its first address of this matter, the redevelopment contract has been signed, a circumstance which apparently affects that ground for confidentiality. Of course, prior to the in camera review, the appellants may further address, and respondents may answer, any general appropriate objections to document withholding.
Within fifteen days following the conclusion of the OPRA proceeding in the trial court, appellants may request a new or supplemental bid protest hearing, and any documents afforded them may, of course, be used by them in that protest hearing and shall become part of the record on appeal if an appeal therefrom is taken. We are also cognizant of appellant's right to appeal the judgment of the trial court on the OPRA issues. Should any appellant choose to do so, respondents are, of course, free to move for acceleration of that appeal or its stay pending completion of the new or supplemental hearing. Finally, should appellants not request a new or supplemental protest hearing following the OPRA proceedings, the remaining appeals now pending shall be consolidated and listed for prompt hearing.
As to appellants' claim under the Open Public Meetings Act (OPMA), we reject the assertion that NJSEA's conduct of its executive session on February 12, 2003, violated the Act. Although the trial court held that the OPMA issue properly belonged in this court, nevertheless it offered as an alternative ground for dismissal of the OPMA claim the rationale that the executive session came within the real estate/public funds and contract-negotiation exceptions of N.J.S.A. 10:4-12(b)(4) and (5). We agree. We acknowledge the salutary legislative purpose of requiring governmental bodies to conduct their business in public, N.J.S.A. 10:4-7, and we agree that the Act must be interpreted to promote that purpose. Thus, as the Supreme Court observed in Payton v. New Jersey Turnpike Authority, 148 N.J. 524, 555-556, 691 A.2d 321 (1997), the stated statutory exemptions permitting closure must be strictly construed, and even where closure is permissible, minutes of the closed meeting, as full as permitted by the nature of the exemption, must be promptly made available. See also South Jersey Pub. v. N.J. Expressway, 124 N.J. 478, 491, 591 A.2d 921 (1991). We also point out that OPMA permits the public body to cure a violation of the Act by taking "corrective and remedial action by acting de *800 novo at a public meeting held in conformity with this act...." N.J.S.A. 10:4-15.
The executive session here challenged was held in accordance with the recommendation of the NJSEA president to initiate contract negotiations with redevelopers who had responded to the RFP and had proposed a contract including a land lease. We have reviewed the minutes of that executive session. We recognize that the reported discussion was expansive respecting the bidders' general compliance with the basic redevelopment criteria of economics, land use, transportation and environmental impact and that at least some of that discussion could possibly have taken place in public without compromising the confidentiality necessary for contract negotiations and disposition of real estate. Nevertheless, we are satisfied that the import of the discussion related sufficiently to contract negotiation issues and real estate disposition as to qualify it for a closed executive session. We are also satisfied that the straw vote taken at the executive session did not vitiate that qualification. See, e.g., In re Cole, 194 N.J.Super. 237, 247, 476 A.2d 836 (App.Div.1984).
We reject, as without merit, appellants' claim that NJSEA is not a state administrative agency whose actions are reviewable in the first instance by this court pursuant to R. 2:2-3(a)(2). NJSEA has all the indicia of a state agency. Its legislative purpose is stated in terms of the development of sports and exposition and ancillary facilities throughout the State. N.J.S.A. 5:10-2. It is constituted as a body corporate and politic within the Department of Community Affairs, and its membership consists of four state officers who are ex officio members and nine additional members appointed by the Governor subject to the advice and consent of the Senate. N.J.S.A. 5:10-4a and b. Its permissible projects include a wide range of sport, entertainment, exposition, educational and related uses throughout the State. N.J.S.A. 5:10-6a. Insofar as we can determine, the claim that it is not a state agency rests only upon the assertion that the Hackensack meadowlands development is geographically limited to that area. The simple answer, however, is that the Hackensack meadowlands development, expressly provided for by N.J.S.A. 5:10-6a(1), is but one of the projects throughout the state that NJSEA is authorized to undertake and is, therefore, hardly exhaustive of the scope and geographical range of its permitted activities. Compare Bishop, supra, 168 N.J.Super. at 536-537, 403 A.2d 934 in which we held that the activities at the Meadowlands Racetrack, a facility of NJSEA operated by the New Jersey Racing Commission, were subject to review pursuant to R. 2:2-3(a)(2). See also Nachtigall v. N.J. Turnpike Authority, 302 N.J.Super. 123, 144, 694 A.2d 1057 (App.Div.), certif. denied, 151 N.J. 77, 697 A.2d 549 (1997) (consortium of public agency members engaged in statewide development project is a state agency for review purposes even if not all its members are, individually, state administrative agencies).
We turn next to the issue of the bid protest hearing. Appellants argue that they are entitled to a contested case hearing by an administrative law judge subject to the procedures of the Office of Administrative Law. We disagree. In Commercial Cleaning Corp. v. Sullivan, 47 N.J. 539, 550, 222 A.2d 4 (1966), the Supreme Court held that a trial-type hearing challenging the bid award is not required, particularly when the bidding authority is not compelled by statute to award the bid to the lowest responsible bidder but may, rather award it to the bidder whose proposal is found to be most advantageous to the public, price being only one factor. Although *801 we are aware that Commercial Cleaning predated the adoption of the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq., we are satisfied that its rationale remains fully viable. See, e.g., Nachtigall, supra, 302 N.J.Super. at 143, 694 A.2d 1057, in which, relying on Commercial Cleaning, we held that "a plenary quasi-judicial hearing need not be afforded provided there is a fair opportunity, consistent with the desideratum of a fair and expeditious conclusion to the procurement process, for the protesting bidder to present the facts and law supporting the protest." See also George Harms Const. v. Turnpike Auth., 137 N.J. 8, 19-20, 644 A.2d 76 (1994).
We appreciate, as was the case in Commercial Cleaning, supra, 47 N.J. at 551-552, 222 A.2d 4, that there are no agency rules governing the conduct of a bid protest hearing, and undoubtedly NJSEA would be wise to adopt such rules. But, as in Commercial Cleaning, the absence of rules does not vitiate the protest proceeding provided basic due process is accorded. To ensure that due process is accorded in any new or supplemental hearing, we direct NJSEA to apprise the parties in advance as to how the hearing will be conducted, to set ground rules that will ensure the protesters' opportunity to present both facts and law, and, most importantly, to include in the determination fully developed findings of fact and conclusions of law responsive to the protesters' arguments. While we recognize that our review is limited to the agency's exercise of discretion and that we will not interfere therein absent bad faith, fraud, corruption or gross abuse of discretion, Keyes Martin & Co. v. Director, Div. of Purchase, 99 N.J. 244, 253, 491 A.2d 1236 (1985), nevertheless, even that limited review cannot be undertaken in the absence of detailed findings of fact addressed to the protesters' specific complaints.
Finally we have no doubt that the nature of the proposed development for which NJSEA sought proposals qualified it not only for a discretionary rather than the mandatory bid award but also for the more liberal standard of competition prescribed to N.J.S.A. 5:10-21.2. We point out first that N.J.S.A. 5:10-21.1a does not require award of any contract to the lowest responsible bidder but rather "to that responsible bidder whose bid, conforming to the invitation for bids, is most advantageous to the authority, in its judgment, upon consideration of price and other factors." The award is, further, required to be made only after public advertisement, and we think it plain that the usual rules of public bidding on government specifications apply. N.J.S.A. 5:10-21.2, on the other hand, exempts certain types of contracts from public bidding, providing, as to that class of contract, that "the authority may make, negotiate, or award the purchase, contract or agreement in any manner which the authority deems necessary to serve its unique interests and purposes and which promotes, when practicable, full and free competition by the acceptance of quotations or proposals or by the use of other suitable methods." Among the class of contracts so exempted, enumerated by N.J.S.A. 5:10-21.3, are services "which are professional or technical in nature...."
It is clear that the RFP here comes within the exempt category. In essence, NJSEA sought the development, for purposes within its broad statutory mandate, of an approximately 104-acre site in the Hackensack meadowlands in the area of Continental Arena, but without a preconceived notion of the specific uses of such a development. Rather, as the RFP made plain, what NJSEA was looking for was a proposal for "a multi-use destination at the *802 Arena site that capitalizes on existing uses at the Meadowlands and expands the product mix in a manner that is complementary to those uses, without materially competing with existing business in the Meadowlands district." Accordingly, it sought a developer to propose "a cohesive plan for the Arena site that will connect to and integrate new development with the remainder of the Complex and existing facilities...." The RFP further listed a number of uses to which it would be amenable, singly or in combination, including, hotel, office, dining, entertainment, retail, recreation, parking and transportation centers, expressing a desire for innovative uses that "best achieve the strategic goals of the Authority, are consistent with the Authority's public purpose as set forth in its enabling legislation, and promote smart growth and sound economic development in the region." The proposal, of course, had to include complex financial arrangements, infrastructure and transportation considerations and environmental concerns in addition to the actual architectural and land use planning components.
Thus, NJSEA did not offer a blueprint or even a framework for the kind of development it wanted, leaving the proposal of a development concept and its details to the imagination and creativity of the bidder. In Nachtigall, supra, 302 N.J.Super. at 136-137, 694 A.2d 1057, we concluded that the nature of the contract for a statewide E-Z pass system was one for professional services based on its integration of sophisticated banking, financial, marketing, traffic consulting, engineering, computer, and a panoply of technical services. This 104-acre development, involving an even greater range of professional services and expertise in an even wider variety of fields, must then be regarded as, a fortiori, providing professional services exempt from usual competitive bidding. While the exemption does not, under the statute, eliminate entirely consideration of competition, it limits it to circumstantial practicality. We are persuaded that the offer to all bidders to develop and present a creative, fully-integrated project within the wide parameters stated by the RFP met that statutory requirement. We further note that the expansive breadth of the RFP and its extraordinary open-endedness imposed upon NJSEA a concomitantly extraordinary scope of discretion in evaluating the proposals.
As to the remaining issues we now address, we reject appellants' claim that the inclusion of retail uses in the RFP, particularly in view of its statement that the development as a whole should not provide competition with Meadowlands businesses, rendered the RFP fatally defective. The issue, as we see it, is simply whether the retail uses are primary or ancillary to the Meadowlands development within the ancillary development jurisdiction contemplated by N.J.S.A. 5:10-6(a)(1). The hearing officer addressed the contention extensively in his report and concluded that a mix including some retail use would complement and enhance the Meadowlands development and is in no way statutorily barred. We agree for the reasons stated by him and by NJSEA in its supplementation adopting the report.
Finally we reject appellants' claim that the RFP was defective because NJSEA had failed to prepare an environmental impact statement and to consult with the Meadowlands Commission and the Department of Environmental Protection as required by N.J.S.A. 5:10-23 before the RFP was issued. Plainly, the involvement of these agencies is required before any development may proceed. But we see nothing in the statutes or case law requiring that to be done prior to issuance of the RFP or even before award of the *803 contract. See generally as to the required participation and approval of these agencies, In re Envtl. Hearings on the Proposed Sports Complex in the Hackensack Meadowlands, 62 N.J. 248, 252-253, 300 A.2d 337, cert. denied, 414 U.S. 989, 94 S.Ct. 291, 38 L.Ed.2d 228 (1973).
We remand to the trial court for OPRA proceedings consistent with this opinion and for a new or supplementary bid protest hearing thereafter. We further hold that NJSEA did not violate the Open Public Meetings Act; that it is a state administrative agency for review purposes; that the RFP was subject to the more relaxed standard of N.J.S.A. 5:10-21.2 and was not vitiated by inclusion of ancillary retail uses; and that the bid protest hearing need not be a quasi-judicial proceeding provided the protesters have an opportunity to present their case and their objections are fully addressed. We reserve to NJSEA all other issues raised by appellants that are not here addressed. We dismiss the appeal under Docket No. A-3805-03T3 as moot.
NOTES
[1] We had originally consolidated all eight appeals. Upon further pre-hearing review, however, we determined that as a matter of orderly procedure, the appeals from the Law Division orders of dismissal should proceed first. We therefore deconsolidated the appeals and then reconsolidated the two appeals from the Law Division. We now consolidate with the Law Division appeals the document appeal under Docket No. A-3805-03T3.
[2] In replacing the Right to Know Law with OPRA by L. 2001, c. 17, the Legislature retained original N.J.S.A. 47:1A-1, the statement of legislative purpose and findings.
[3] The same result could more expeditiously have been achieved by a stay of the appellate proceeding pending completion of the OPRA claims in the Law Division without the necessity of a separate motion in this court seeking document access.