**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0716-24

ASSOCIATION FOR
GOVERNMENTAL
RESPONSIBILITY, ETHICS
AND TRANSPARENCY,

      Plaintiff-Appellant,

v.

STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY
GENERAL, DEPARTMENT OF
LAW AND PUBLIC SAFETY,
DIVISION OF LAW and
OCTAVIA BAKER, as
custodian of records,

      Defendants-Respondents.

_____

      Argued March 11, 2026 – Decided March 26, 2026

      Before Judges Gummer, Paganelli, and Vanek.

      On appeal from the Superior Court of New Jersey, Law
      Division, Mercer County, Docket No. L-1233-24.

Donald F. Burke argued the cause for appellant (Law Office of Donald F. Burke, attorneys; Donald F. Burke and Donald F. Burke, Jr., on the briefs).

Daniel W. Knox, Deputy Attorney General, argued the cause for respondents (Jennifer Davenport, Attorney General, attorney; Donna Arons and Raymond R. Chance III, Assistant Attorneys General, of counsel; Daniel W. Knox, on the brief).

PER CURIAM

Plaintiff Association for Governmental Responsibility, Ethics and Transparency appeals an order dismissing its complaint seeking a judgment declaring defendants violated the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and common law right of access. Defendants had denied plaintiff's request for production of written materials provided in a training course for deputy attorneys general. Because the trial court did not conduct an in camera review of the documents before rendering its decision, we vacate the order and remand with instructions that the court conduct an in camera review and consider its decision anew.

I.

The Division of Law (DOL) within the Department of Law and Public Safety (the Department) provides legal services to the Governor and other State officers and entities. N.J.S.A. 52:17A-1, -2, -4. It acts as the sole legal advisor

and counsel to State officers and entities in most government matters. N.J.S.A. 52:17A-4(e). The Attorney General is the head of the Department and the DOL and serves as the State's chief law enforcement officer. N.J.S.A. 52:17A-2, -3; N.J.S.A. 52:17B-2, -9.8.

According to the Attorney General's website, the Attorney General's Advocacy Institute is an accredited New Jersey continuing legal education provider. See New Jersey Office of the Attorney General, Attorney General's Advocacy Institute, Dep't of L. & Pub. Safety, https://www.njoag.gov/about/ divisions-and-offices/attorney-generals-advocacy-institute-home/ (last visited March 17, 2026). It "runs litigation skills courses and lecture programs" and "provides training that meets the practice needs of deputy and assistant attorneys general, county prosecutors and other government lawyers." Ibid.

As part of the DOL's "Basic Civil & Administrative Practice Series," on April 10, 2024, the Advocacy Institute offered a course entitled "Ethically and Effectively Representing State Agencies" (the course). See New Jersey Office of the Attorney General, 2024-0410_Ethically-and-Effectively-Representing-State-Agencies, Attorney General's Advocacy Institute, https://www.nj.gov/ oag/advocacy_institute/2024-0410_Ethically-and-Effectively-Representing-State-Agencies.pdf (last visited March 17, 2026). The course "is mandatory for

3 <span>A-0716-24</span>

[DOL] Deputy Attorneys General hired after October 2023 who have not previously completed the Basic Civil and Administrative Practice (BCAP) series of courses." Ibid. The Advocacy Institute described the program as:

> [P]rovid[ing] guidance on ethically representing State agencies, including understanding the organization as a client and adhering to the requirements of [Rules of Professional Conduct (RPCs)] 4.2 and 4.3 governing communications with persons represented by counsel and unrepresented parties. It will also cover DOL policies on litigation holds, acceptance of service and handling and responding to requests for representation.
>
> [Ibid.]

The course was registered as an "in-house" program with the Supreme Court's Board on Continuing Legal Education and approved by the Board for 1.2 hours of continuing legal education credit, which qualified as credit for ethics and professionalism training. Ibid.

On May 3, 2024, plaintiff's counsel submitted a request "[p]ursuant to OPRA and the common law," for the course's "webinar and course materials." On May 10, 2024, Octavia L. Baker, the DOL's Records Custodian, denied the request, stating:

> Be advised that the Advocacy Institute is an internal training unit of the Attorney General's Office. The training it provides is only open to attorneys in the Attorney General's office and to assistant prosecutors. Trainings and training materials are not open to those

who are not government attorneys. See N.J.A.C. 13:1E-3.2(a)(3), which states that standard operating procedures, manuals, and training materials that may reveal legal strategy, advice, attorney work product or other privileged material are confidential, and not subject to OPRA.

In a May 10, 2024 email, plaintiff's counsel asked that the requested materials be provided "pursuant to the common law and the New Jersey Constitution." In a May 11, 2024 email, he contended the exemption under N.J.A.C. 13:1E-3.2(a)(3) did not apply because the requested materials "should not reveal 'case or matter specific legal strategy or advice, attorney work product, attorney-client privileged material, or other privileged material.'" He also suggested any exempted or privileged material could be redacted and requested "a Vaughn index justifying the redactions."[1] On May 16, 2024, the custodian advised counsel the DOL "maintain[ed] its response."

On June 24, 2024, plaintiff filed an application for an order to show cause and a verified complaint naming as defendants the Office of the Attorney General, the Department, the DOL, and Baker. Plaintiff described itself as "an

---

[1] See N. Jersey Media Grp. Inc. v. Bergen Cnty. Prosecutor's Office, 447 N.J. Super. 182, 191 (App. Div. 2016) (describing a Vaughn index as an index "in which the custodian of records identifies responsive documents and the exemptions it claims warrant non-disclosure") (citing Vaughn v. Rosen, 484 F.2d 820, 826-27 (D.C. Cir. 1973)).

A-0716-24

association dedicated to advancing the interest of governmental responsibility, ethics and transparency."  In the two-count complaint, plaintiff sought a judgment:  declaring defendants had violated OPRA and the common law right of access by failing to produce the requested materials; requiring defendants to produce the requested materials and, if necessary, a <u>Vaughn</u> index; and a counsel fee award pursuant to N.J.S.A. 47:1A-6  and N.J.S.A. 10:6-2.  On June 25, 2024, the court entered the order to show cause, setting a briefing schedule and a hearing date.

In opposition, defendants submitted a certification from Margaret Cotoia, the director of the Advocacy Institute.  In her certification, Cotoia described the focus of the Advocacy Institute's "mission" as "includ[ing] training [deputy attorneys general] in points of legal strategy and how to analyze issues particular to representing State agencies."  She described the purpose of the Advocacy Institute programs as "foster[ing] and develop[ing] state and governmental attorneys' understanding and appreciation of particular legal strategies and provide awareness of issues that often face State attorneys in various topics of law, offering techniques on how to analyze and confront such issues."

Cotoia certified that the Advocacy Institute programs "and their accompanying materials vary in detail, with some programs providing case

6

specific examples and analysis and substantively detailed handouts, and others being limited to basic concepts and issues" and that "[t]raining materials are only provided to those eligible participants registered for the program." According to Cotoia, the programs "are not open to the private bar or the public" and typically "are only open to attorneys in the [Department], with some programs open to county [prosecutors] and attorneys in other government agencies." She described the BCAP series, which included the course, as being:

> designed to instruct the DOL['s] newly hired Deputy Attorneys General on their legal responsibilities as well as highlight legal issues that are likely to be encountered in litigation. These courses provide new DOL deputies with instruction on both legal issues and DOL internal policies and processes, and include legal strategies, guidance and frameworks for analysis on particular subjects.

According to Cotoia, BCAP courses are "closed to all but DOL deputies." Cotoia did not comment on the contents of the course material sought by plaintiff.

Defendants also submitted a certification from Michael Walters, the assistant attorney general and deputy director of the DOL who taught the course and prepared the materials for it. He described his efforts as follows:

> 5. To prepare for this training, I researched, collected, and created PowerPoint slides of relevant case law and [RPCs], that would provide DOL deputies with an

7

introduction to the RPC and issues related to the RPCs that DOL attorneys face when representing state entities. Because DOL serves as the primary legal counsel for the New Jersey State government, DOL deputies are likely to confront these issues because their positions require providing legal advice to State agencies, defending the State in civil litigation, and bringing civil lawsuits to uphold the law. In my experience, this legal training is helpful to DOL deputies' legal careers in representing state entities.

6. The case law and highlighted RPCs in the training materials were tailored to the types of issues [deputy attorneys general] are likely to encounter and to provide an analytical framework to consider questions of legal ethics.

7. The training also advises the new deputies on the DOL's internal policies that were created with the relevant RPC, rules of the court, and case law in mind.

After hearing argument, the court entered a September 30, 2024 order with an accompanying statement of reasons denying plaintiff's requested relief and dismissing the complaint with prejudice. Without reviewing the course materials, the court found "[t]he course and materials teach new government attorneys particular legal strategies related to specific issues they are likely to encounter" and "[t]he training instructs new government attorneys on legal issues the [DOL] expects to be raised in litigation and provides legal guidance." Based on that finding, the court concluded "the requested documents reveal specific legal strategy and advice." The court held the requested materials were

8

"government records," but defendants had "met their burden of showing that the requested records are exempt from OPRA disclosure" and "not subject to public access under N.J.A.C. 13:1E-3.2(a)(3)."

The court also expressed concern that disclosing the materials would "create an uneven playing field in which private attorneys enter litigation with the State armed with their opponent's strategy." The court held "[p]laintiff's interest in understanding how attorneys representing State agencies are trained does not outweigh the State's interest in confidentiality."

Considering plaintiff's arguments under the common law right of access, the court held plaintiff had met the first two prongs of the three-part test articulated by the Court in Keddie v. Rutgers, State University, 148 N.J. 36, 50 (1997): "The requested materials are public records and [p]laintiff asserted a wholesome public interest in how government attorneys represent State agencies." However, the court concluded plaintiff had not met the third prong: "[p]laintiff's right to access does not outweigh [d]efendants' interest in preventing disclosure." The court found: "[d]efendants' interests include the ability to effectively represent their clients and avoiding a chilling effect on future trainings. In addition, the requested material contains confidentiality concerns recognized in N.J.A.C. 13:1E-3.2(a)(3), raising the presumption that

9

releasing the records is not in the public interest." Consequently, the court held plaintiff was not entitled to access to the materials under the common law. The court denied plaintiff's fee application because plaintiff was not a prevailing party under N.J.S.A. 47:1A-6.

This appeal followed.

II.

A trial court's factual findings are "binding on appeal when supported by adequate, substantial and credible evidence." Horne v. Edwards, 477 N.J. Super. 302, 312 (App. Div. 2023) (quoting Rova Farms Resort, Inc. v. Inv's. Ins. Co. of Am., 65 N.J. 474, 484 (1974)); see also C.E. v. Elizabeth Pub. Sch. Dist., 481 N.J. Super. 172, 179 (App. Div. 2025) (finding our review of a trial court's "supported factual findings" is deferential). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Zaman v. Felton, 219 N.J. 199, 216 (2014) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). "We review questions of law de novo." T.L. v. Goldberg, 238 N.J. 218, 228 (2019) (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)).

Because the meaning of a statute is a question of law, we review a trial

court's statutory interpretation de novo. Fuster v. Twp. of Chatham, 259 N.J. 533, 546 (2025). Thus, "determinations about the applicability of OPRA and its exemptions are legal conclusions . . . subject to de novo review." Id. at 547 (omission in original) (quoting In re Firemen's Ass'n Obligation, 230 N.J. 258, 273-74 (2017)). In performing that de novo review, we are guided by the well-established principles of statutory construction. Those principles apply equally to our interpretation of regulations. Medford Convalescent & Nursing Ctr. v. Div. of Med. Assistance & Health Servs., 218 N.J. Super. 1, 5 (App. Div. 1985) (finding "[r]egulations are subject to the same rules of construction as a statute").

When interpreting a statute, we "determine and give effect to the Legislature's intent." In re H.D., 241 N.J. 412, 418 (2020) (quoting N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 20 (2013)). "[S]tatutory construction begins with an examination of the plain language of the statute, 'ascrib[ing] to the . . . words their ordinary meaning and significance.'" State v. Higginbotham, 257 N.J. 260, 280 (2024) (omission and second alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "We 'may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed

by way of the plain language.'" Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). "[W]e 'strive for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void or insignificant.'" Fuster, 259 N.J. at 547 (quoting G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 172 (1999)). To determine legislative intent, we "look not only at the particular statutory language but also to the design of the statute as a whole." Est. of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 219 (App. Div. 2004).

"New Jersey law recognizes two distinct procedures by which individuals and entities may seek an order compelling the disclosure of public records." Gannett Satellite Info. Network, LLC v. Twp. of Neptune, 254 N.J. 242, 248 (2023). "The first is a claim under [OPRA], legislation 'designed to give members of the public ready access to government records unless the statute exempts them from disclosure.'" Ibid. (quoting Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 140-41 (2022)) (internal quotation marks omitted). "The second cause of action available to a requestor seeking access to public records is a claim pursuant to the common law, in which the requestor is not limited to the categories of information subject to disclosure under OPRA." Id. at 249.

"The Legislature passed OPRA in 2001 to replace the then-existing Right to Know Law, L. 1963, c. 73, which 'did not keep pace with the vast technological advances that changed the ways citizens and public officials communicate and store information.'" Simmons v. Mercado, 247 N.J. 24, 38 (2021) (quoting Paff v. Galloway Twp., 229 N.J. 340, 352 (2017)). "Our state boasts 'of a long and proud tradition[] of openness and hostility to secrecy in government.'" Id. at 37 (alteration in original) (quoting Educ. Law Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 283 (2009)) (internal quotation marks omitted). "To further enhance government transparency, OPRA was enacted 'to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Id. at 37-38 (quoting Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)).

"OPRA is designed to provide the public with 'ready access to government records.'" Libertarians for Transparent Gov't v. Cumberland Cnty., 250 N.J. 46, 54 (2022) (quoting Burnett v. Cnty. of Bergen, 198 N.J. 408, 421 (2009)). "The law declares at the outset that 'all government records shall be subject to public access unless exempt.'" Ibid. (quoting N.J.S.A. 47:1A-1). "Plus 'any limitations on the right of access . . . shall be construed in favor of the public's right of access.'" Ibid. (omission in original) (quoting N.J.S.A. 47:1A-1). "The statute

broadly defines the term 'government record.'" Ibid. "The phrase includes any documents 'made, maintained or kept on file in the course of . . . official [government] business.'" Ibid. (alteration and omission in original) (quoting N.J.S.A. 47:1A-1.1).

"Although OPRA favors broad public access to government records, it is 'not intended [to be] a research tool [that] litigants may use to force government officials to identify and siphon useful information.'" Simmons, 247 N.J. at 38 (alterations in original) (quoting In re N.J. Firemen's Ass'n Obligation, 230 N.J. at 276). "The public's right to disclosure, while broad, is not unlimited." Bozzi v. City of Jersey City, 248 N.J. 274, 284 (2021). "OPRA itself makes plain that 'the public's right of access [is] not absolute.'" Kovalcik v. Somerset Cnty. Prosecutor's Off., 206 N.J. 581, 588 (2011) (alteration in original) (quoting Educ. Law Ctr., 198 N.J. at 284).

OPRA "calls for a careful balancing of competing interests -- the right of access to government records versus the need to protect [certain] information." Libertarians for Transparent Gov't, 250 N.J. at 54. "One way to achieve that balance is through targeted redactions of information that should not be disclosed." Ibid. "More generally, if part of a record is exempt from public access, the records custodian is authorized to redact that portion of the document

14

and must then 'promptly permit access to the remainder of the record.'" Ibid. (quoting N.J.S.A. 47:1A-5(g)).

In addition to certain exemptions expressly enumerated in the statute, OPRA states its provisions "shall not abrogate any exemption of a public record or government record from public access heretofore made pursuant to . . . regulation promulgated under the authority of any statute . . . ." N.J.S.A. 47:1A-9. "As part of his supervisory obligations for the Department . . . under the Law and Public Safety Act of 1948, the Attorney General is charged with 'formulat[ing] and adopt[ing] rules and regulations for the efficient conduct of the work and general administration of the department, its officers and employees.'" In re Att'y Gen. L. Enf't Directive Nos. 2020-5 & 2020-6, 465 N.J. Super. 111, 131 (App. Div. 2020) (alterations in original) (quoting N.J.S.A. 52:17B-4(d)), aff'd as modified, 246 N.J. 462 (2021).

N.J.A.C. 13:1E-3.2 is one of those regulations. It provides, in relevant part, that certain "records shall not be considered government records subject to public access pursuant to [OPRA], . . . including standard operating procedures, manuals, and training materials that may reveal: case or matter specific legal strategy or advice, attorney work product, attorney-client privileged material, or other privileged material." N.J.A.C. 13:1E-3.2(a)(3).

15

The parties do not dispute the course-related documents at issue are "training materials" under the regulation. They dispute whether the court correctly determined that those training materials are exempt from OPRA under N.J.A.C. 13:1E-3.2(a)(3) because, as the court found, they "reveal specific legal strategy and advice." The court made that finding without conducting an in camera review of the materials. Instead, it based its factual finding solely on its review of the Cotoia certification, which did not discuss the contents of the materials, and the Walters certification. The Walters certification, although it provided some information regarding the contents of the material, was not a sufficient ground on which the court could render that factual finding.

This court has held that "in an OPRA action, . . . the [trial] court is obliged when a claim of confidentiality or privilege is made by the public custodian of the record, to inspect the challenged document <u>in camera</u> to determine the viability of the claim." <u>MAG Ent., LLC, v. Div. of Alcoholic Beverage Control</u>, 375 N.J. Super. 534, 551 (App. Div. 2005); <u>see also</u> <u>Hartz Mountain Indus., Inc. v. N.J. Sports & Exposition Auth.</u>, 369 N.J. Super. 175, 183 (App. Div. 2004) (same). An in camera review provides the parties with an "opportunity . . . to address general principles relative to the claim of confidentiality and privilege" and "the government custodian" with "an opportunity . . . to argue specifically,

16

as part of the in camera review, why the document should be deemed privileged or confidential or otherwise exempt from the access obligation." Hartz Mountain, 369 N.J. Super. at 183.

In this case, we need not go so far as to say a requestor under OPRA has an automatic right to in camera inspection by the court. But, under the circumstances of this case with only limited information about the materials provided and no Vaughn index, we conclude the court erred in not conducting an in camera review and the court's finding about the content of the material was insufficiently "supported by adequate, substantial and credible evidence." Horne, 477 N.J. Super. at 312 (quoting Rova Farms, 65 N.J. at 484). Accordingly, we vacate the September 30, 2024 order and remand, directing the court to conduct an in camera review of the course materials and only then determine whether the exemption under N.J.A.C. 13:1E-3.2(a)(3) applies. See, e.g., Hartz Mountain, 369 N.J. Super. at 180, 184-85 (remanding for an in camera review and "reconsideration of the OPRA issues"). If after conducting the in camera review and hearing the parties' arguments, the court concludes N.J.A.C. 13:1E-3.2(a)(3) applies, the court should determine whether the course materials can be disclosed in part, with the exempted portions redacted.

A-0716-24

Defendants argue the course materials constitute attorney work product and, consequently, are exempt from OPRA under the provision of N.J.A.C. 13:1E-3.2(a)(3) concerning the attorney work-product doctrine. "The 'work[-]product' doctrine 'protects from disclosure those documents and other tangible things that a party or a party's representative prepares in anticipation of litigation.'" Rivard v. Am. Home Prods., Inc., 391 N.J. Super. 129, 155 (App. Div. 2007) (quoting Laporta v. Gloucester Cnty. Bd. of Chosen Freeholders, 340 N.J. Super. 254, 259 (App. Div. 2001)) (internal quotation marks omitted); see also Paladino v. Auletto Enters., Inc., 459 N.J. Super. 365, 370-75 (App. Div. 2019) (discussing the scope of the work-product doctrine); R. 4:10-2(c) (memorializing the work-product doctrine). "Generally, a document will be deemed to have been prepared in anticipation of litigation when the dominant purpose in its preparation was concern for potential litigation, the prospect of which was objectively reasonable." Rivard, 391 N.J. Super. at 155. "[A] document may be found to have been prepared in anticipation of litigation even though litigation had not been commenced or even threatened when the document was prepared." Miller v. J.B. Hunt Transp., Inc., 339 N.J. Super. 144, 149 (App. Div. 2001).

Having found the course materials otherwise exempt under the regulation, the court did not address defendants' work-product argument in its decision. Given the incompleteness of the record before us, we decline to do so now. See Rivera, 250 N.J. at 145-47 (when the record was incomplete because the document at issue was not in the record and had not been reviewed by the trial court, the Court held the Appellate Division erred in exercising its original jurisdiction to decide an access issue trial court had not reached). We direct the court on remand to consider and decide the merits of defendants' work-product argument, making the necessary findings of fact following its in camera review of the course materials. See Paladino, 459 N.J. Super. at 374 (finding court must engage in "a case-by-case, fact-specific analysis" to determine whether work-product doctrine applies); Brugaletta v. Garcia, 234 N.J. 225, 245 (2018) (holding "[w]hen a requesting party challenges an assertion of privilege, the court must undertake an in camera review of the purportedly privileged document or information and make specific rulings as to the applicability of the claimed privilege").

We now turn to plaintiff's argument the court erred in finding "[p]laintiff's right to access d[id] not outweigh [d]efendants' interest in preventing disclosure" and, consequently, the course materials were not subject to disclosure under the

19

common law right of access.

"Long before the Legislature codified the right of access to certain public documents, we recognized 'that citizens have [a] common law right to require custodians of public records to make them available for reasonable inspection and examination.'" Am. C.L. Union of N.J. v. Cnty. Prosecutors Ass'n of N.J., 257 N.J. 87, 109-10 (2024) (alteration in original) (quoting Tarus v. Borough of Pine Hill, 189 N.J. 497, 507 (2007)) (internal quotation marks omitted). "The definition of a public record under the common law is broader than under OPRA." Rivera, 250 N.J. at 143. "To obtain records under 'this broader class of materials, [a] requestor must make a greater showing than OPRA requires.'" Id. at 144 (alteration in original) (quoting N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 578 (2017)).

"To access public documents under the common law . . . (1) the person seeking access must establish an interest in the subject matter of the material and (2) the citizen's right to access must be balanced against the State's interest in preventing disclosure." Am. C.L. Union of N.J., 257 N.J. at 110 (quoting Mason, 196 N.J. at 67-68) (internal quotation marks omitted). The Court has "identified six factors to consider in balancing the interests." Rivera, 250 N.J. at 144. Those factors are:

(1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government;

(2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed;

(3) the extent to which agency self-evaluation, program improvement, or other decision[]making will be chilled by disclosure;

(4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers;

(5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and

(6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.

[Ibid. (quoting Loigman v. Kimmelman, 102 N.J. 98, 113 (1986)).]

"Statutes and regulations can also factor into the balancing process but do not determine its outcome. Expressions of executive or legislative policy can weigh very heavily in the analysis, but they are not dispositive." Ibid. Thus, "when engaging in the balancing test required under the common law, a court may look to the exclusions in OPRA as expressions of legislative policy on the subject of confidentiality." Bergen Cnty. Improvement Auth. v. N. Jersey Media Grp., Inc., 370 N.J. Super. 504, 520 (App. Div. 2004). "However, if application

21

of common law principles would lead to a finding in favor of disclosure, OPRA provisions cannot be invoked to defeat a citizen's right of access." Id. at 520-21. "OPRA does not limit the right of access to government records under the common law." Am. C.L. Union of N.J., 257 N.J. at 110 (quoting Rivera, 250 N.J. at 143).

We recognize that "a right to automatic in camera inspection is not warranted" in all claims under the common law right of access. Loigman, 102 N.J. at 109. But an in camera review is warranted in this case. In Rivera, the Court held "the record [was] incomplete and d[id] not allow for the fact-specific balancing test required under the common law" because the report at issue was "not in the record and ha[d] not been reviewed by the trial court." 250 N.J. at 146. We reach the same conclusion in this case. Accordingly, we also vacate the aspect of the September 30, 2024 order dismissing plaintiff's common-law claim and remand the matter, directing the court to conduct an in camera review of the course materials and only then complete a fact-sensitive balancing test as required under the common law right of access.

In sum, we vacate the September 30, 2024 order and remand the case. We direct the court to conduct an in camera review of the course materials and then perform the required analyses under OPRA, the attorney work-product doctrine,

22

and the common law right of access, considering whether the course materials could be made available in redacted form. We take no position on the ultimate outcome of those analyses.

In anticipation that the parties may wish to seek further review of our opinion, we stay the opinion, sua sponte, for thirty days to give the parties time to seek the Supreme Court's review before the production of the materials to the trial court for in camera review. If any party files a petition for certification within that thirty-day period, the stay shall automatically continue unless and until the Court orders otherwise. See Des Champs Labs., Inc. v. Martin, 427 N.J. Super. 84, 108 (App. Div. 2012). We hope that preserving the status quo, pending the Court's possible review, will minimize disruption and avoid the potential consequences of any interim disclosures. See L.R. v. Camden City Pub. Sch. Dist., 452 N.J. Super. 56, 97 (App. Div. 2017), aff'd by an equally divided Court, 238 N.J. 547 (2019).

Vacated and reversed for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

23

A-0716-24