**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3357-24
                A-3412-24

SHAWN G. HOPKINS,

     Plaintiff-Appellant,

v.

COUNTY OF HUNTERDON,
the RECORDS CUSTODIAN of the
COUNTY OF HUNTERDON and
HUNTERDON COUNTY BOARD
OF TAXATION,

     Defendants-Respondents.

_____

SHAWN G. HOPKINS,

     Plaintiff-Respondent,

v.

COUNTY OF HUNTERDON,
the RECORDS CUSTODIAN of the
COUNTY OF HUNTERDON and
HUNTERDON COUNTY BOARD
OF TAXATION,

     Defendants-Appellants.

Submitted April 15, 2026 – Decided April 30, 2026

Before Judges Gummer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0041-25.

Shawn G. Hopkins, self-represented appellant in A-3357-24 and self-represented respondent in A-3412-24.

Savo, Schalk, Corsini, Warner, Gillespie, O'Grodnick & Fisher, PA, attorneys for appellants in A-3412-24 and respondents in A-3357-24 (Matthew R. Flynn, of counsel and on the briefs).

PER CURIAM

Plaintiff Shawn G. Hopkins and defendants County of Hunterdon, the Records Custodian of the County of Hunterdon, and the Hunterdon County Board of Taxation appeal from an order denying plaintiff's application for the production of records under Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13.[1] Plaintiff argues, among other things, the trial court erred in finding the production of the records would violate County residents' reasonable expectation of privacy under N.J.S.A. 47:1A-1. Defendants contend the court correctly denied plaintiff's application but erred in not applying OPRA's

---

[1] We consolidate these back-to-back appeals for purposes of issuing a single opinion.

third-party-records exclusion under N.J.S.A. 47:1A-5(i)(1).  Because the court did not conduct an in camera review of the records before rendering its decision, we vacate the order and remand with instructions for the court to conduct an in camera review and consider its decision anew.

I.

On December 5, 2024, plaintiff filed an OPRA request with the County seeking:  "[a]ny electronic data files provided to BRT [T]echnologies by the Hunterdon County Board of Taxation in relationship to the contract between Hunterdon County Board of Taxation and BRT Technologies for [a]utomated [d]ata [p]rocessing [s]ervices."  Plaintiff also requested "[a] copy of [b]id [s]pecifications entitled:  Furnish Automated Data Processing Services for the Board of Taxation, County of Hunterdon.  Dated April 6, 2023."

In a December 12, 2024 email, County Counsel Katrina Doyle informed plaintiff the County had "uploaded the Bid specification" but had not provided the Computer Assisted Mass Appraisal (CAMA) data files he requested.  Citing N.J.S.A. 47:1A-5(i)(1), Doyle explained "[t]hose files are not the County's records.  They are the records of the individual municipalities."  She told plaintiff he "should make [his] request for this data to the individual municipalities."

Responding to the email, plaintiff disputed the County's contention it did not own the CAMA data at issue and made factual assertions based on his understanding of the role and duties of the County Tax Administrator and his interpretation of language in "[t]he bid contract." In reply, Doyle asserted the County "does not create, maintain or store the data for any of the CAMA files" and "does not have any authority to make any changes to the CAMA files." According to Doyle, the County "as a service to its municipalities, ha[d] enter[ed] a shared service agreement with [the] vendor to provide the software necessary to maintain the municipality's CAMA files," thereby enabling "the municipalities to all utilize the same vendor and get the best rate for the software." Doyle interpreted the contract as requiring "the municipalities to work directly with the vendor to make any changes to the municipality's data" and authorizing the vendor "to work directly with the municipality, as it is their data." She contended the County Tax Administrator's "supervis[ion of] the performance of the municipal tax assessors . . . . d[id] not give [the Administrator] any ownership rights over the municipal assessor's work product."

In a December 16, 2024 post on the County's online OPRA portal, the County confirmed it was providing a copy of the bid information but not the

4

electronic data files because the County "d[id] not maintain" those files. The County suggested plaintiff might "wish to contact the individual municipalities directly to obtain th[at] information."

On January 20, 2025, plaintiff filed a verified complaint based on defendants' denial of his OPRA request for access to the CAMA data files. He subsequently filed an application for an order to show cause seeking a judgment requiring defendants to produce the data files.

Defendants submitted a letter brief in opposition to plaintiff's application. In the letter brief, defense counsel made factual assertions about the software programs the vendor had provided, how individual municipal tax accessors work with the vendor, and the transmission of the data. Counsel's factual assertions were not supported by an affidavit or certification of someone with personal knowledge about the records. See R. 1:6-6 (requiring "affidavits made on personal knowledge" to support "facts not appearing of record, or not judicially noticeable"). Defense counsel described the records sought by plaintiff as "[t]he work product and data . . . of the individual municipalities, . . . created and maintained by the individual municipal tax assessors and . . . only made available to the County by way of remote access."

Based on that information, defense counsel contended defendants were not in possession of the records pursuant to N.J.S.A. 47:1A-5(i)(1). Defense counsel also asserted "the CAMA data may contain references to bedroom size and layout, the location of burglar alarms, safes, panic rooms, or security systems and may contain notes from the individual assessor." Defense counsel argued "[t]he private nature of that information create[d] minimally a colorable claim of privacy."

The court heard argument. In a May 16, 2025 oral decision and May 19, 2025 order, the court denied plaintiff's order-to-show-cause application and request for an order requiring the production of the CAMA data files.[2] The court appeared to reject defendants' argument based on the third-party-records exclusion set forth in N.J.S.A. 47:1A-5(i)(1). The court quoted the statutory language and stated, "That's not the case here." The court described the information stored in the CAMA data files as "tax assessors' information after inspections of premises." The court found the data "does or might contain . . . clearly private information" and, thus, fell within the privacy exception of

---

[2] In the order, the court did not expressly dismiss the complaint with prejudice. However, given that the court resolved the issues raised by plaintiff in the complaint, we understand the order to be a final judgment and appealable pursuant to Rule 2:2-3(a)(1).

6

N.J.S.A. 47:1A-1. The court held "plaintiff has no need of access because the plaintiff could go to each individual municipality and let them fight it out there."

On appeal, plaintiff argues the court erred in allowing defendants to raise the privacy exception under N.J.S.A. 47:1A-1, finding it applied and not finding defendants were collaterally estopped from denying access to the records. In their appeal, defendants argue the court erred in not applying the third-party-records exclusion under N.J.S.A. 47:1A-5(i)(1).

II.

A trial court's factual findings are "binding on appeal when supported by adequate, substantial and credible evidence." Horne v. Edwards, 477 N.J. Super. 302, 312 (App. Div. 2023) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)); see also C.E. v. Elizabeth Pub. Sch. Dist., 481 N.J. Super. 172, 179 (App. Div. 2025) (finding our review of a trial court's "supported factual findings" is deferential). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Zaman v. Felton, 219 N.J. 199, 216 (2014) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). "We review questions of law de novo." T.L. v. Goldberg, 238 N.J. 218, 228 (2019) (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386

7

(2016)).

Because the meaning of a statute is a question of law, we review a trial court's statutory interpretation de novo. Fuster v. Twp. of Chatham, 259 N.J. 533, 546 (2025). Thus, "determinations about the applicability of OPRA and its exemptions are legal conclusions . . . subject to de novo review." Id. at 547 (omission in original) (quoting In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 273-74 (2017)). In performing that de novo review, we are guided by the well-established principles of statutory construction.

When interpreting a statute, we "determine and give effect to the Legislature's intent." In re H.D., 241 N.J. 412, 418 (2020) (quoting N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 20 (2013)). "[S]tatutory construction begins with an examination of the plain language of the statute, 'ascrib[ing] to the . . . words their ordinary meaning and significance.'" State v. Higginbotham, 257 N.J. 260, 280 (2024) (omission and second alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "We 'may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). "[W]e 'strive for an interpretation that gives effect to all of the

statutory provisions and does not render any language inoperative, superfluous, void or insignificant.'"  Fuster, 259 N.J. at 547 (quoting G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 172 (1999)).  To determine legislative intent, we "look not only at the particular statutory language but also to the design of the statute as a whole."  Est. of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 219 (App. Div. 2004).

"The Legislature passed OPRA in 2001 to replace the then-existing Right to Know Law, L. 1963, c. 73, which 'did not keep pace with the vast technological advances that changed the ways citizens and public officials communicate and store information.'"  Simmons v. Mercado, 247 N.J. 24, 38 (2021) (quoting Paff v. Galloway Twp., 229 N.J. 340, 352 (2017)).  "Our state boasts 'of a long and proud tradition[] of openness and hostility to secrecy in government.'"  Id. at 37 (alteration in original) (quoting Educ. Law Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 283 (2009)) (internal quotation marks omitted).  "To further enhance government transparency, OPRA was enacted 'to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'"  Id. at 37-38 (quoting Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)).

"OPRA is designed to provide the public with 'ready access to government

records.'" Libertarians for Transparent Gov't v. Cumberland Cnty., 250 N.J. 46, 54 (2022) (quoting Burnett v. Cnty. of Bergen, 198 N.J. 408, 421 (2009)). "The law declares at the outset that 'all government records shall be subject to public access unless exempt.'" Ibid. (quoting N.J.S.A. 47:1A-1); see also Gannett Satellite Info. Network, LLC v. Twp. of Neptune, 254 N.J. 242, 248 (2023) (finding the Legislature "designed [OPRA] to give members of the public ready access to government records unless the statute exempts them from disclosure." (quoting Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 140-41 (2022)) (internal quotation marks omitted)). "Plus 'any limitations on the right of access . . . shall be construed in favor of the public's right of access.'" Libertarians for Transparent Gov't, 250 N.J. at 54 (omission in original) (quoting N.J.S.A. 47:1A-1). "The statute broadly defines the term 'government record.'" Ibid. "The phrase includes any documents 'made, maintained or kept on file in the course of . . . official [government] business.'" Ibid. (alteration and omission in original) (quoting N.J.S.A. 47:1A-1.1).

"Although OPRA favors broad public access to government records, it is 'not intended [to be] a research tool [that] litigants may use to force government officials to identify and siphon useful information.'" Simmons, 247 N.J. at 38 (alterations in original) (quoting In re N.J. Firemen's Ass'n Obligation, 230 N.J.

10

at 276). "The public's right to disclosure, while broad, is not unlimited." <u>Bozzi v. City of Jersey City</u>, 248 N.J. 274, 284 (2021). "OPRA itself makes plain that 'the public's right of access [is] not absolute.'" <u>Kovalcik v. Somerset Cnty. Prosecutor's Off.</u>, 206 N.J. 581, 588 (2011) (alteration in original) (quoting <u>Educ. Law Ctr.</u>, 198 N.J. at 284).

While providing for public access to government records, the Legislature in enacting OPRA also "declare[d] that a public agency must 'safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's <u>reasonable</u> expectation of privacy.'" <u>Brennan v. Bergen Cnty. Prosecutor's Off.</u>, 233 N.J. 330, 337 (2018) (quoting N.J.S.A. 47:1A-1); <u>see also</u> <u>Burnett</u>, 198 N.J. at 423 (finding OPRA "imposes an obligation on public agencies to protect against disclosure of personal information which would run contrary to reasonable privacy interests"). Thus, OPRA "calls for a careful balancing of competing interests -- the right of access to government records versus the need to protect personal information." <u>Libertarians for Transparent Gov't</u>, 250 N.J. at 54.

To balance those interests, courts examine the following factors when a records custodian "present[s] a colorable claim that public access to the records requested would invade a person's objectively reasonable expectation of

privacy," <u>Brennan</u>, 233 N.J. at 342:

> (1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access.
>
> [<u>Id.</u> at 340 (quoting <u>Burnett</u>, 198 N.J. at 428).]

Plaintiff argues the court should not have considered defendants' privacy-interest argument under the doctrines of judicial, promissory, and collateral estoppel. We disagree.

"[J]udicial estoppel is an 'extraordinary remedy,' which should be invoked only 'when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'" <u>C.P. v. Governing Body of Jehovah's Witnesses</u>, 477 N.J. Super. 129, 143 (App. Div. 2023) (quoting <u>Kimball Int'l, Inc. v. Northfield Metal Prods.</u>, 334 N.J. Super. 596, 608 (App. Div. 2000)). Under the doctrine of judicial estoppel, "[i]n order to protect the integrity of the court system, '[w]hen a party successfully asserts a position in a prior legal proceeding, that party cannot assert a contrary position in subsequent litigation arising out of the same

events.'" Id. at 142-43 (second alteration in original) (quoting Kress v. LaVilla, 335 N.J. Super. 400, 412 (App. Div. 2000)).

"[T]o be estopped a party must have convinced the court to accept its position in the earlier litigation." Hanisko v. Billy Casper Golf Mgmt., Inc., 437 N.J. Super. 349, 356 (App. Div. 2014) (quoting Ali v. Rutgers, 166 N.J. 280, 288 (2000)). "Because the doctrine of judicial estoppel only applies when a court has accepted a party's position, a party ordinarily is not barred from taking an inconsistent position in successive litigation if the first action was concluded by a settlement." Kimball Int'l, 334 N.J. Super. at 607; Hanisko, 437 N.J. Super. at 356. "[A] settlement neither requires nor implies any judicial endorsement of either party's claim or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel." Com. Ins. Co. of Newark v. Steiger, 395 N.J. Super. 109, 116 (App. Div. 2007) (quoting Kimball Int'l, 334 N.J. Super. at 608).

"Promissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Goldfarb v. Solimine, 245 N.J. 326, 339-40 (2021) (quoting Toll Bros. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 253 (2008)).

13

"Collateral estoppel is an equitable remedy that bars re-litigation of any issue that was determined in a prior action." In re Borough of Englewood Cliffs, 473 N.J. Super. 189, 202 (App. Div. 2022). Collateral estoppel applies when:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Ibid. (quoting Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012)).]

In support of his estoppel arguments, plaintiff relies on a prior production of CAMA data that occurred as a result of a 2023 settlement of a matter before the Government Records Council, statements made in that matter, and a 2015 initial decision by an administrative law judge in a matter involving Monmouth, Sussex, and Morris counties, but not Hunterdon County. Those items do not support application of any of the preclusionary doctrines cited by plaintiff. The production was a result of a settlement, the statements do not constitute a "clear and definite" promise made with the expectation of reliance, and defendants were not involved in the 2015 administrative-law matter. Toll Bros., 194 N.J.

A-3357-24

at 253. Accordingly, the court did not err in considering defendants' privacy-interest argument.

But in deciding that issue, the court should not have rendered factual findings unsupported by certifications or affidavits in the record or absent an in camera review of the requested records. We are unable to discern from the record before us the basis of the court's factual findings regarding the contents of the requested records or the collection of the information contained in them. See In re D.L.B., 468 N.J. Super. 397, 416 (App. Div. 2021) (addressing Rule 1:7-1(a), court finds "[a] judge's fact-finding must explain 'how and why the ultimate conclusion was drawn.'" (quoting N.J. Div. of Youth & Fam. Servs. v. H.P., 424 N.J. Super. 210, 230 (App. Div. 2011))). We are not bound by a trial court's factual determinations that are unsupported "by adequate, substantial and credible evidence." Rova Farms, 65 N.J. at 484.

Moreover, this court has held that "in an OPRA action, . . . the [trial] court is obliged when a claim of confidentiality or privilege is made by the public custodian of the record, to inspect the challenged document in-camera to determine the viability of the claim." MAG Ent., LLC, v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 551 (App. Div. 2005); see also Hartz Mountain Indus., Inc. v. N.J. Sports & Exposition Auth., 369 N.J. Super. 175,

183 (App. Div. 2004) (same). An in camera review provides the parties with an "opportunity . . . to address general principles relative to the claim of confidentiality and privilege" and "the government custodian" with "an opportunity . . . to argue specifically, as part of the in camera review, why the document should be deemed privileged or confidential or otherwise exempt from the access obligation." Hartz Mountain, 369 N.J. Super. at 183.

We are not saying the court had an obligation to review in camera each line of the requested data. But under the circumstances of this case, with no certifications or affidavits from which the court could have determined the confidential and private nature of the information contained in the records, we conclude the court should have conducted in camera review to fulfill its obligation to carefully balance the "competing interests" of "the right of access to government records" and "the need to protect personal information." Libertarians for Transparent Gov't, 250 N.J. at 54. Accordingly, we are constrained to vacate the May 19, 2025 order and remand, directing the court to conduct an in camera review of the requested records.

Next, we turn to defendants' appeal. We recognize "appeals are taken from judgments, not opinions" and that generally parties do not have a right to appellate review of an order in their favor. Price v. Hudson Heights Dev., LLC,

16

417 N.J. Super. 462, 467 (App. Div. 2011). Given our remand, however, we deem it appropriate to address defendants' argument regarding OPRA's third-party-records exclusion.

N.J.S.A. 47:1A-5(i)(1) provides, in relevant part:

> A public agency shall not be considered to be in possession of a public record that is created, maintained, or received by another public agency and made available to the public agency either by remote access to a computer network or by distribution as a courtesy copy, unless the agency that created, maintained, or received the record resides within the judicial branch of the State Government. A records custodian of a public agency that receives a request for a record created, maintained, or received by another public agency shall not be obligated to provide the record to the requestor. In the event the custodian does not provide the record, the custodian shall direct the requestor within seven business days to the public agency that, to the best of their knowledge, created, maintains, or received the requested record, at which time the request shall be considered completed.
>
> [N.J.S.A. 47:1A-5(i)(1).]

Addressing defendants' argument based on that exclusion, the court said only, "That's not the case here." That single sentence failed to meet the requirements of Rule 1:7-4(a). "[A] trial court must 'find the facts' in its oral or written opinion." In re D.L.B., 468 N.J. Super. at 416 (quoting R. 1:7-4(a)). "Failure to make explicit findings and clear statements of reasoning constitutes

17

a disservice to the litigants, the attorneys, and the appellate court." Id. at 416-17 (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)) (internal quotation marks omitted). The court's insufficient factual findings on this issue also requires a remand. See id. at 416 (court was "constrained to reverse and remand because the trial court did not consider all relevant evidence or make sufficient factual findings").

In sum, we vacate the May 19, 2025 order and remand, directing the court to conduct an in camera review of the requested records and only then determine whether the records are exempt under N.J.S.A. 47:1A-1 or N.J.S.A. 47:1A-5(i)(1). See, e.g., Hartz Mountain, 369 N.J. Super. at 180, 184-85 (remanding for an in camera review and "reconsideration of the OPRA issues"). If after conducting the in camera review and hearing the parties' arguments, the court concludes the privacy exemption but not the third-party-records exemption applies, the court should determine whether the records can be disclosed in part, with the exempted portions redacted. See Libertarians for Transparent Gov't, 250 N.J. at 54 (finding "if part of a record is exempt from public access, the records custodian is authorized to redact that portion of the document and must then 'promptly permit access to the remainder of the record'" (quoting N.J.S.A. 47:1A-5(g))). We take no position on the ultimate outcome of those analyses.

To the extent we have not expressly addressed any arguments presented by the parties, we note that we have considered the arguments and determined they are not of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division